NO. 13-7086

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

### For the District of Columbia Circuit

## DEBORAH D. PETERSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES C. KNIPPLE (DECEASED), ET AL.,

*Plaintiffs-Appellants,*

v.

## ISLAMIC REPUBLIC OF IRAN, ET AL.,

*Defendants-Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

### BRIEF OF APPELLANTS

---

Thomas Fortune Fay
John Vail
FAY KAPLAN LAW, PA
777 Sixth Street, NW
Suite 410
Washington, D.C. 20001
(202) 589-1300

*Counsel for Appellant*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

### I.    Parties

Appellants Deborah Peterson, et al. were the petitioners before the District

Court and appear as Appellants before this Court. HSBC USA, N.A. ("HBUS")

was the respondent before the District Court and appears here as the Appellee

before this Court.  Appellees the Islamic Republic of Iran and the Iranian Ministry

of Information and Security are judgment debtors in this garnishment action. There

were no intervenors or amici in the District Court.  Counsel has consented to a

group of United States Senators filing an amicus brief in support of Appellants in

this Court.


### II.    Rulings Under Review

Appellants seek review of the district court's April 11, 2013 order and

memorandum opinion denying plaintiffs' motion for sanctions pursuant to D.C.

Code §16-526(b), and motion to schedule discovery and oral argument. (Dkt #500

and #501), JA 302, 303. A motion for reconsideration pursuant to Federal Civil

Rule 60(b) was filed on April 25, 2013 (Dkt #503) and denied by order entered on

May 22, 2013 (Dkt #511 and #512), JA 347. A Notice of Appeal was filed on May

23, 2013. JA 352.

i

## III.   Related Cases

The case on review here was previously before this Court in 2007 (Case No. 07-7140) on a different issue than that presented here.[1] The 2007 appeal (No. 07-7140) was dismissed voluntarily by appellants and the case was remanded to the district court on February 22, 2008. A case involving similarly-situated parties and similar issues to the questions presented here, *Heiser v. Islamic Republic of Iran,* No. 12-7101, is pending decision by this Court.

/s/ Thomas Fortune Fay, Esq.
Thomas Fortune Fay

/s/ John Vail, Esq.
John Vail

---

[1] Appellants filed Case No. 07-7140 in order to resolve a question of damages available to some plaintiffs within the group represented here, who were barred from recovering damages by the tort laws in their respective domiciliary states. The appeal was resolved without further litigation in this Court after the passage of a statute, §1083 of the National Defense Authorization Act of 2008.

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS, AND
RELATED CASES………………………………………………………...……i

TABLE OF AUTHORITIES……………………………………………………iv

GLOSSARY OF ABBREVIATIONS…………………………………………..ix

JURISDICTIONAL STATEMENT……………………….…………………..…1

STANDING AND STANDARD OF REVIEW …………………………….…...1

STATEMENT OF THE ISSUES……………………………………….…….…..2

STATUTES AND REGULATIONS……………………………………….….…2

STATEMENT OF THE CASE……………………………..…………………….2

STATEMENT OF FACTS…………………...……………………………...……3

SUMMARY OF THE ARGUMENT……………………………...……………..9

ARGUMENT……………………………………………………………......…13

I.   THE EFTS IN QUESTION WERE "BLOCKED ASSETS"
SUBJECT TO ATTACHMENT AND EXECUTION UNDER
TRIA AND SHOULD HAVE BEEN IDENTIFIED IN RESPONSE TO
PLAINTIFFS' INTERROGATORIES. …………………………….......13

     A. The EFTs Could Not Have Become Blocked Assets Absent
        a Determination By OFAC That Iran Had a
        Property Interest in Them. …………………………………….....15

     B. Interests Innocent Parties Might Have in Blocked Assets Are
        Accommodated Under TRIA and Under OFAC Regulations………....17

C. The Key Word in The Phrase "Of That Terrorist Party"
   is That, Not Of. ………………………………………………………..20

CONCLUSION………………………………………………………………...25

CERTIFICATE OF COMPLIANCE…………………………………………...26

CERTIFICATE OF SERVICE ………………………………………………...27

ADDENDUM………………………………………………………….…A1

iv

# TABLE OF AUTHORITIES

## Cases

*Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*
  863 F.2d 891(D.C. Cir. 1988) …………………………………………....2

*Am. Bus Ass'n v. Slater*,
  231 F.3d 1 (D.C. Cir. 2000)…………………………………………..22

*Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
  131 S.Ct. 2188 (2011)…………….……………………………………21

*Calderon - Cardona v. JPMorgan Chase Bank, N.A.*,
  867 F.Supp.2d 389 (S.D.N.Y. 2011)...……………………….....…….10, 17

*C.I.R. v. Engle*,
  464 U.S. 206 (1984)…………………………………………………..23

\*Estate of Heiser v. Islamic Republic of Iran,
  885 F. Supp. 2d 429 (D.D.C. 2012) ………………...………8, 10, 16, 18, 21

*Estate of Heiser v. Bank of Tokyo*,
  919 F. Supp. 2d 411 (S.D.N.Y. 2013) ………………………….....…..10

*Florida Audubon Soc. v. Bentsen*
  94 F.3d 658 (D.C. Cir. 1996)………………………………………..1

*Grain Traders, Inc. v. Citibank, N.A.*,
  160 F.3d 97 (2d Cir. 1998) ………………………………...…….20

\*Hausler v. JP Morgan Chase Bank, N.A. (*Hausler* I)
  740 F. Supp. 2d 525 (S.D.N.Y. 2010)…………..………...…….9, 11, 17, 20

*Hausler v. JP Morgan Chase Bank, N.A.* (*Hausler* II)
  845 F. Supp. 2d 553 (S.D.N.Y. 2012) ………………..……..……10, 23, 24

\*Authorities upon which we chiefly rely are marked with asterisks.

v

*Lamie v. U.S. Tr.*
    540 U.S. 526 (2004)……………………………………………….......22

*\*Levin v. Bank of New York* (*Levin* I)
    2011 WL 812032 (S.D.N.Y. March 4, 2011)…………………….9, 16, 26, 22

*\*Levin v. Bank of New York,* (*Levin* II)
    2013 WL 5312502 (S.D.N.Y. 2013)…………………………...10, 11, 22, 23

*NLRB v. Lion Oil Co.*
    352 U.S. 282 (1957) ………………………………………………………….23

*Peterson v. Islamic Republic of Iran*
    515 F. Supp. 2d 25 (D.D.C. 2007) ……………………………….……3

*United States v. Jain,*
    174 F.3d 892 (7th Cir.1999)…………………………………………….......22

*Weininger v. Castro,*
    462 F.Supp. 2d 457 (S.D.N.Y.2006)…...…………………………….…...23

*Weinstein v. Islamic Republic of Iran,*
    609 F.3d 43 (2d Cir. 2010) ……………………………………...…...22, 24

**Statutes**

28 U.S.C. §1291 …………………………………………………………...1

28 U.S.C. §1330 …………………………………………………………...1

D.C. Code § 16-526(b)………………………………………...…….....7, 24

International Emergency Economic Powers Act,
    50 U.S.C. 1701 *et seq.*………………….……………...………...………12, 14

Terrorism Risk Insurance Act (TRIA)
    Pub. L. No. 107-297 (2002) ……………….…8, 9, 12, 14, 16, 17, 18, 20, 21

U.C.C. § 4A…………………………………………………...………8, 17, 20

**Regulations**

31 C.F.R. § 501.801.........................................................................10

31 C.F.R .§501.806..........................................................................10

31 C.F.R. §535 *et seq*.......................................................................6

31 C.F.R. § 535.502..........................................................................10

31 C.F.R. §544 *et seq*. ..........................................................7, 12, 13, 14

31 C.F.R. §544.101...........................................................................15

31 C.F.R. §544.201...........................................................................15

31 C.F.R. §544.305...........................................................................15

31 C.F.R. §544.308...........................................................................16

31 C.F.R. §544.502 ..........................................................................11

31 C.F.R. §594 *et seq*. ..........................................................7, 12, 13, 14

31 C.F.R. §594.101...........................................................................15

31 C.F.R. §594.201...........................................................................15

31 C.F.R. §594.306...........................................................................15

31 C.F.R. §594.309...........................................................................16

31 C.F.R. §594.502 ..........................................................................10

**Other Authorities**

Global Terrorism Sanctions Regulations,
    68 Fed. Reg. 34196 (6 Jun. 2003)...............................................12, 14

Weapons of Mass Destruction Proliferators Sanctions Regulations,
    74 Fed. Reg. 16771 (13 Apr. 2009) ........................................12, 14

*U.S. Vulnerabilities to Money Laundering, Drugs, and Terrorist Financing:*
*HSBC Case History*
    S. Rep. No. 112-597 (2012)..........................................5, 13, 14, 19

48 Cong. Rec. S11524 (Nov. 19, 2002)
    (statement of Sen. Harkin) ...............................................19, 23-24

H.R. Conf. Rep. 107-779 (2002) ...............................................11, 23

# GLOSSARY OF ABBREVIATIONS

| Term | Definition |
|------|------------|
| EFT | Electronic Funds Transfer |
| Dkt | Docket Number in District Court Proceeding Below |
| HBUS | H.S.B.C. Bank USA, N.A. |
| IEEPA | International Emergency Economic Powers Act |
| JA | Page Number in the Appendix |
| OFAC | Office of Foreign Assets Control |
| TRIA | Terrorism Risk Insurance Act |
| UCC | Uniform Commercial Code |

## JURISDICTIONAL STATEMENT

The dispute before the Court arises from the enforcement of a judgment against the Islamic Republic of Iran, a foreign sovereign, pursuant to a claim made by Appellants, American citizens, under the Foreign Sovereign Immunities Act (FSIA). *See generally* 28 U.S.C. §§1602-11. The district court had jurisdiction under 28 U.S.C. §1330.

The district court issued a final order on April 11, 2013 denying Appellant's Motion for Sanctions in a post-judgment enforcement action against Appellee, HBUS. This Court has jurisdiction pursuant to 28 U.S.C.A. §1291.

## STANDING AND STANDARD OF REVIEW

Appellants are judgment creditors of the Islamic Republic of Iran. Appellants assert that HBUS is in possession of Iranian assets which Appellants seek to attach in satisfaction of their judgment. HBUS contests this attachment, claiming that the blocked accounts, which arrived at the bank in the form of Electronic Funds Transfers, are not a type of asset that may be attached under the Terrorism Risk Insurance Act (TRIA). Appellants have "personally ... suffered some actual or threatened injury," which may be "fairly ... traced to the challenged action" and is "likely to be redressed by a favorable decision" of the court. *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996).

This Court reviews a district court's interpretation of the Terrorism Risk

Insurance Act (TRIA), an issue of law, *de novo. See Air Line Pilots Ass'n Int'l v. E.*

*Air Lines, Inc.*, 863 F.2d 891, 894 (D.C. Cir. 1988).

## STATEMENT OF THE ISSUES

1. Did the District Court err in finding that HBUS's May 2008 response to Plaintiffs' interrogatories was legally accurate, and therefore non-sanctionable, despite HBUS's failure to disclose that it held electronic fund transfers (EFTs) that were blocked assets of Iran for purposes the Terrorism Risk Insurance Act?

2. Even if the EFTs in question cannot on the existing record be determined to be blocked assets of Iran, did the District Court err in denying Plaintiffs' request for discovery that could have shown whether the parties of the transactions were Iranian terrorist parties pursuant to TRIA?

## STATUTES AND REGULATIONS

All statutes and regulations relied upon by Appellants are set forth in an

addendum to this brief, beginning at page A1.

## STATEMENT OF THE CASE

This appeal arises from Appellant's motion for sanctions pursuant to the

D.C. garnishment statute, D.C. Code Title 16 §526(b). The motion was filed on

January 28, 2013 in the United States District Court for the District of Columbia.

Dkt #485, after Appellants received conflicting responses on interrogatories served

on Appellees in 2008 (JA 204) and subpoenas served in 2012 (JA 220).

2

On February 25, 2013, Appellees opposed the motion. JA 232. Appellants

moved to schedule discovery and oral arguments. Dkt #494. HBUS opposed

Appellants' motion for a scheduling order, Dkt #496, and, in response to

Appellants' discovery requests, moved for a protective order.  JA 265.

On April 11, 2013, the District Court, Lamberth, J., denied Appellants'

requests for discovery and for sanctions. JA 302, 303.  Appellants filed a motion

for reconsideration on April 25, 2013 (JA 308), which the District Court denied on

May 22, 2013. JA 346, 347. Appellants timely noticed their appeal on May 23,

2013. JA 352.

## STATEMENT OF FACTS

Appellants in this case are eight-hundred and eleven survivors, family

members, and personal representatives of the estates of fallen United States

Marines who were victims of the October 23, 1983 Beirut Marines barracks

bombing carried out by Hezbollah and sponsored by the Islamic Republic of Iran.

*See Peterson v. Islamic Republic of Iran,* 515 F. Supp. 2d 25 (D.D.C. 2007). On

September 7, 2007, the United States District Court for the District of Columbia,

Chief Judge Royce C. Lamberth, presiding, entered final judgment in the case,

awarding Appellants $2.7 billion. JA at 111.  Since that date, Appellants have been

engaged in ongoing efforts to collect their award, which remains unsatisfied today.

3

As part of these efforts, on April 30, 2008, Appellants served Appellee

HSBC Bank USA, N.A. (hereafter, "HBUS") with a Writ of Attachment on

Judgment ("The Writ"). JA 203. The Writ was accompanied by two

interrogatories, which asked the Appellees:

> 1. Were you at the time of the service of the writ of attachment, or
> have you been between the time of such service and the filing of your
> answers to this interrogatory, indebted to the defendant(s), and, if so,
> how, and in what amount?
>
> 2. Had you at the time of the service of the writ of attachment, or have
> you had between the time of such service and the filing of your
> answer to this interrogatory, any goods, chattels, or credits of the
> defendant(s) in you[r] [sic] possession or charge, and, if so, what?

*Id.* Also attached to Appellant's Writ was "Exhibit A," a list of fifty-seven

agencies and instrumentalities of the Islamic Republic of Iran to which the

interrogatories above could apply.  JA 205. The Exhibit specified items to which

the Writ could attach:

> This attachment applies to credits, accounts, accounts receivable, right
> to payment of money, general intangibles, deposits, deposit accounts,
> claim for payment of money, debts due, right to draw down on any
> line of credit or banking relationship, rights to receive and demand
> payment from any loan or credit account, rights to demand and
> receive any advance of money, funds or credit in which the obligor
> (debtor or person owing the money) is the *garnishee on this Writ of*
> *Attachment on Judgment (non wages),* as listed on the front page of
> this Writ of Attachment, and the obligee (or creditor or person to
> whom the money is owed) is the Islamic Republic of Iran, or any of
> its ministries, divisions, subdivisions, agencies and/or
> instrumentalities …[.]

4

JA 205 (emphasis in original). HBUS replied "no" to each of Appellants'

interrogatories and returned the Writ on May 6, 2008. JA 212-13. Appellants had

no reason to doubt HBUS's responses, and, relying on the bank's assertions,

sought other avenues to collect their judgment.

On July 17, 2012, the United States Senate Permanent Subcommittee on

Investigations released a report titled, *U.S. Vulnerabilities to Money Laundering,*

*Drugs, and Terrorist Financing: HSBC Case History* (hereafter, "The Senate

Report"). S. Rep. No. 112-597 (2012), JA 354. The 335 page report describes

HSBC's weak anti-money laundering (AML) policies. The report found that HSBC

had a longstanding pattern of "opening U.S. correspondent accounts for high-risk

affiliates without conducting due-diligence; facilitating transactions that hinder

U.S. efforts to stop terrorists, drug traffickers, rogue jurisdictions, and other[s] [sic]

from using the U.S. financial system; [and] providing U.S. correspondent services

to banks with links to terrorism." *See* Senate Report, pp. 3-4, JA 361-62. Over the

course of several years, the bank systematically thwarted prohibitions of the Office

of Foreign Assets Control (hereafter, OFAC) by stripping information from wire-

transfer documents in order to conceal transactions with sanctioned nations such as

the Islamic Republic of Iran. *Id.* at 115-16, JA 374-75. At least into 2009 HSBC

engaged in ongoing, undisclosed "U-turn" wire transfers with Iranian customers.

These transactions involved Iranian entities as both originators and recipients and

5

allowed Iran to receive United States currency that otherwise was forbidden to it.

*Id.* at 164-165, JA 423-24.[1]

Based upon this new information, Appellants issued subpoenas on HBUS on

November 14, 2012, this time requesting, *inter alia*:

> All documents and/or electronically stored information for the
> calendar years of 2008 through 2009 and pertaining to any and all
> financial transactions, communications concerning, payments to or
> from, accounts either controlled (directly or indirectly), or payable to
> the Islamic Republic of Iran or its known financial instrumentalities
> (i.e. Bank Melli, Bank Kshavari, Bank Markazi, Bank Sepah, Bank
> Tejarat, the Export Development Bank of Iran) or any other Iranian
> Financial Institution subject to U.S. Sanctions against the Islamic
> Republic of Iran.

JA 220. On December 19, 2012, HBUS responded to Appellants' subpoena, with

objections. In its response, the Bank disclosed three EFTs with Iran that took place

between service of Appellants' 2008 Writ and HBUS's answer to that Writ and

that had not been disclosed in response to the 2008 interrogatories:

---

[1] At all times relevant here OFAC filters have blocked any banking transaction
between American and Iranian banks. *See* 31 C.F.R. Part 535 (explaining the
origin of Iranian sanctions); Senate Report at 115, JA 374. U-Turn transactions
allowed Iranian clients to move money through non-Iranian foreign banks, change
the local currency from that bank to dollars, and collect the dollars through the
foreign intermediary. U.S. dollars could move through the world market without
putting American businesses in direct contact with Iran. *Id.*

| Recipient | Current Value | Date Blocked |
|---|---|---|
| Bank Melli PLC, London | $21,060.22 | February 21, 2008 |
| Bank Melli Iran/Iranian Airport Co. | $2,713.05 | March 12, 2008 |
| Bank Mellat, Tehran, Iran | $508.38 | March 24, 2008 |

JA 229-30. Each of the Iranian recipients named in HBUS's 2012 response was listed on "Exhibit A" of Appellant's 2008 Writ.

HSBC had not completed funds transfers in those accounts because OFAC regulations under the Nonproliferation of Weapons of Mass Destruction, 31 C.F.R. pt. 544, or Specially Designated Global Terrorist Programs, 31 C.F.R pt. 594,[2] "required U.S. financial institutions," including HBUS, "to block EFTs involving entities," including the Islamic Republic of Iran, covered by those regulations. Zytnick Decl. p. 2, para. 7; Memo in Opp., 10, JA 246.

Plaintiffs moved for sanctions, asking the court to enforce a provision in the D.C. garnishment statute that states, "[w]hen the garnishee has failed to answer the interrogatories served on him, … judgment shall be entered against him for the whole amount of the plaintiff's claim, and costs, and execution may be had thereon." Dkt. #485; *see also* D.C. Code Title 16 §526(b). They also asked for discovery that could demonstrate the level of culpability of HBUS and to discern

---

[2] The Zytnick Affidavit refers to these regulations by this nomenclature. HBUS's Memo in Opp. below, at 10, clarifies that the regulations are the Global Terrorism Sanctions found at 31 C.F.R. pt. 594.

whether terrorist parties were originators, as well as beneficiaries, of the blocked transactions. *See* Plaintiffs' Motion for Scheduling Order, Dkt #497 at 5.

The District Court denied Appellants' requests for sanctions and discovery, reasoning HBUS committed "no sanctionable conduct" because HBUS, as an intermediary bank in the transfer of the Iranian funds, held no property "belonging" to Iran under definitions of ownership in Article 4A of the Uniform Commercial Code (hereafter, UCC). JA 302, 303. The court interpreted Section 201(a) of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297 (2002) to allow judgment creditors of a state sponsor of terrorism to "execute on only the assets 'of' – or, in other words, 'belonging to' – the terrorist state committing the act." *Id.* at 4, quoting *Estate of Heiser v. Islamic Republic of Iran,* 885 F. Supp. 2d 429, 438 (D.D.C. 2012). According to the court, TRIA lacks a definition of which assets "belong to" a terrorist judgment creditor, and in the absence of direction in the statute, the court turned to property definitions within Article 4A of the UCC to fashion federal common law. Under the UCC, an electronic fund transfer does not "belong" to its terrorist beneficiary. *Id.* at 5. By this reasoning, Iran had no property interest in the accounts that HSBC failed to disclose, and therefore, according to the District Court, the nondisclosure was not sanctionable.

8

## SUMMARY OF THE ARGUMENT

The court below misconstrued the Terrorism Risk Insurance Act (TRIA). A closer reading of its unambiguous text accommodates the concerns of the court below regarding innocent parties, gives effect to the intent of Congress to make assets of terrorist parties more readily available to victims of terrorism, and requires the conclusion that the "blocked assets" at issue here should have been identified by HBUS when Plaintiffs first asked about them in 2008.

The court below emphasized the wrong word in a key phrase: TRIA permits Plaintiffs to attach "the blocked assets of that terrorist party." The court below reasoned that "of" in the key phrase denotes that the terrorist party must own the assets in question and the court therefore required Plaintiffs to show, as a prerequisite to attachment, that Iran had a property interest, as a matter of federal common law, in the blocked assets. Other courts have concluded that by definition a terrorist party has some property interest, defined by TRIA and OFAC regulations, in anything that meets the definition of "blocked asset" under TRIA and that there is no need to look to other sources of law to explicate the key phrase. For those courts, the key word in the key phrase is "that," which serves to limit the blocked assets which can be attached to those of the particular terrorist party in question. *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 533-34 (S.D.N.Y. 2010) (*Hausler I*); *Hausler v. JP Morgan Chase Bank, N.A.,* 845 F.

Supp. 2d 553, 566-67 (S.D.N.Y. 2012) (*Hausler II*) (appeal pending, *Hausler v. Novafin Financiere*, No. 12-79, 2d Cir.); *Estate of Heiser v. Bank of Tokyo,* 919 F. Supp. 2d 411, 421-22 (S.D.N.Y. 2013); *Levin v. Bank of New York*, 2011 WL 812032 (S.D.N.Y. March 4, 2011) (*Levin I*); *Levin v. Bank of New York*, 2013 WL 5312502 (S.D.N.Y. 2013) (*Levin II*). *But see Calderon-Cardona v. JP Morgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 405 (S.D.N.Y.2011).

The court below was animated by a concern that the alternative reading of TRIA would impose a "potentially heavy cost on innocent property owners. For example, if a foreign national living and working in a different country attempted to send money to his personal bank account in Iran, this transfer could be blocked and, under plaintiffs' reading of TRIA, be subject to attachment."[3] *Heiser,* 885 F. Supp. 2d at 440. But, in this case, persons who had sent EFTs – their innocence, or lack of it, cannot be established, as discovery regarding their identities was denied; it is wholly possible that Iran was the sender, as well as the recipient, of these EFTs[4] – already had had their money blocked. Administrative adjudicatory processes were available to them to unblock their funds. *See* 31 C.F.R. §§501.806

---

[3] The court below effectively incorporated its earlier opinion in *Heiser* into its decision here. *See, e.g.,* Opinion Below at *5 ("Under *Heiser,* defendants had no property interest in these blocked EFTs."), JA 307.

[4] *See* n. 1, *supra.*

10

(mistaken identity); §544.502 (effect of license or authorization); § 594.502 (effect of license or authorization). *See also* 31 C.F.R. § 501.801 (licensing); and, within the Iranian Assets Control Regulations, § 535.502, (effect of license or authorization). *See also Levin II,* 2013 WL at *28 (explaining that "the proper avenue for redress for commercial third-party Defendants is through OFAC's administrative procedures," and that "[i]f parties dispute OFAC decisions, they may seek judicial review"). Attaching these funds under TRIA does not render the funds immediately available for execution. It leads only, as other courts have recognized, to an interpleader action in which innocent parties would be able to protect their rights prior to execution. *See Levin II, supra,* 2013 WL at *2, 14-15 (explaining that banks holding blocked assets identified over two hundred commercial third- party Defendants with potential rights or claims to the blocked assets); *Hausler I,* 740 F. Supp. at 541-42. The other courts have recognized that in enacting TRIA Congress meant to give new enforcement tools to victims of terrorism: TRIA was meant to "deal *comprehensively* with the problem of enforcement of judgments rendered on behalf of victims of terrorism." H.R. Rep. No. 107-779 at 27 (2002) (Conf. Rep.) (emphasis added) (quoted approvingly, with emphasis, in *Hausler* II at 563).

The lower court concluded that HBUS could not be sanctioned for failing to respond to Plaintiffs' questions because "HBUS's 2008 statements that it was not

11

'indebted to' defendants and did not possess any of their 'goods, chattels, or credits' were *legally* accurate, notwithstanding their failure to mention these blocked EFTs." Opinion Below at *5, JA 307 (emphasis added). In doing so, the court did not account for HBUS's admission that it well understood, at the time Plaintiffs posed their questions, that the EFTs in question were blocked under OFAC regulations regarding Nonproliferation of Weapons of Mass Destruction or Global Terrorist Sanctions. Zytnick Decl. p. 2, para. 7; Defendants' Memo in Opp., at 10, JA 246. Both of those regulatory regimes were enacted under the authority of the International Emergency Powers Act, 50 USC 1701 *et seq.*, *see* notes to 31 C.F.R. pts. 544, 594; Global Terrorism Sanctions Regulations, 68 Fed. Reg. 34196 (6 Jun. 2003) (interim final rule promulgating regulations in furtherance of sanctions in Executive Order 13224); Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 Fed. Reg. 16771 (13 Apr. 2009) (final rule amending 31 C.F.R. 544 to implement Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and their Supporters"), and thus the blocked assets in question fell squarely within the definition of "blocked assets" in TRIA §201(d)(2)(A). These EFTs could not have become "blocked assets" under TRIA unless OFAC already had determined that Iran had some property "interest" in them, because regulatory regimes enacted pursuant to both statutes require that determination as a condition of blocking an EFT related to a terrorist party. 31

12

C.F.R. pts. 544, 594, discussed *infra* at 14. Congress incorporated these regimes into its definition of "blocked assets" in TRIA. The requirement of the lower court of additional pre-attachment proof of ownership is a redundancy inconsistent with the text or purpose of the statute.

Plaintiffs had made clear to HBUS that their inquiries related to any "credits, accounts, accounts receivable, right to payment of money, general intangibles, deposits, deposit accounts, claim for payment of money, debts due," terms which clearly fall within the regulatory definitions of "interest" under which the bank was operating. To any extent there was ambiguity regarding the Bank's knowledge, the denial of Plaintiffs' requested discovery precluded Plaintiffs from resolving it.

Plaintiffs asked HBUS whether it possessed anything in which Iran had an interest. It did, but it did not say that it did. Its evasiveness was consistent with a pattern of misbehavior regarding Iranian assets. *See, e.g.,* Senate Report, pp. 3-4, pp. 112-167; JA 361-426. It violated its statutory duties and it should be subjected to statutory sanctions.

## ARGUMENT

I.  **THE EFTS IN QUESTION WERE "BLOCKED ASSETS" SUBJECT TO ATTACHMENT AND EXECUTION UNDER TRIA AND SHOULD HAVE BEEN IDENTIFIED IN RESPONSE TO PLAINTIFFS' INTERROGATORIES**

The three EFTs at issue here were blocked under one of two regulatory regimes administered by OFAC: Nonproliferation of Weapons of Mass Destruction, 31 C.F.R. pt. 544, or Global Terrorism Sanctions, 31 C.F.R. pt. 594. Zytnick Decl. p. 2, para. 7; Defendants' Memo in Opp. at 10, JA 246. Both of those regulatory regimes were enacted under the authority of the International Emergency Economic Powers Act, 50 U.S.C. 1701 *et seq*. *See* notes to 31 C.F.R. pts. 544, 594; Global Terrorism Sanctions Regulations, 68 Fed. Reg. 34196 (6 Jun. 2003) (interim final rule promulgating regulations in furtherance of sanctions in Executive Order 13224); Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 Fed. Reg. 16771 (13 Apr. 2009) (final rule amending 31 C.F.R. pt. 544 to implement Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and their Supporters").

TRIA defines "blocked assets," in relevant part, as "any asset seized or frozen by the United States… under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)." The EFTs at issue unambiguously are "blocked assets" for purposes of TRIA, and HBUS knew all the facts necessary to reach that conclusion at the time it responded to Plaintiffs' interrogatories. Its non-response was consistent with a pattern of indifference about fidelity to regulatory regimes designed to deal with money laundering by terrorists. *See* Senate Report, pp. 3-4, pp. 112-167, JA 361-426.

14

## A. THE EFTS COULD NOT HAVE BECOME BLOCKED ASSETS ABSENT A DETERMINATION BY OFAC THAT IRAN HAD A PROPERTY INTEREST IN THEM

Both sets of OFAC regulations incorporated into TRIA assert that they are *sui generis*, 31 C.F.R .544.101; 31 C.F.R. 594.101, but they have parallel provisions and employ identical definitions of key terms. Both regimes block transfers of "property and interests in property" of Iran. 31 C.F.R. §§544.201, 594.201.

Both regimes define an "interest" broadly: "Except as otherwise provided in this part, the term interest when used with respect to property (e.g., 'an interest in property') means an interest of any nature whatsoever, direct or indirect." 31 C.F.R. §§ 544.305, 594.306. They similarly broadly define "property and property interest" to include, but not be limited to:

> money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling

15

> agreements, services of any nature whatsoever, contracts of any nature
> whatsoever, and any other property, real, personal, or mixed, tangible
> or intangible, or interest or interests therein, present, future or
> contingent.

31 C.F.R. §§ 544.308, 594.309. See *Levin I,* 2011 WL at *17 ("This definition of

what constitutes a "property interest" is substantially broader than that found under

New York law, and evinces a congressional intent to block even property in which

a terrorist entity has only a limited interest."). These definitions render the blocked

assets clearly within the purview of the questions Plaintiffs posed.

Here, the district court found otherwise:

> Interpreting the legal significance of the terms of the interrogatory
> requires looking to plaintiffs' statutory authority for pursuing these
> assets in the first place. Section 201(a) of the Terrorism Risk
> Insurance Act ("TRIA"), Pub. L. No. 107–297, 116 Stat. 2322 (2002),
> allows a person holding a judgment against a state sponsor of
> terrorism to attach and execute on "the blocked assets of that terrorist
> party." This provision allows plaintiffs to "execute on only the assets
> 'of'—or, in other words, 'belonging to'—the terrorist state
> committing the act." *Heiser*, 885 F.Supp.2d at 438 [an earlier decision
> by the same court]. This provision "preempt[s] District of Columbia
> law." *Id*. at 444. However, the statute does not provide standards to
> determine which assets "belong to" defendants. To answer that
> question, the Court "looks to Restatements, legal treatises, and state
> decisional law to find and apply what are generally considered to be
> the well-established standards of state common law, a method of
> evaluation which mirrors—but is distinct from—the federal common
> law approach." *Id*. (quoting *Estate of Doe v. Islamic Republic of Iran*,
> 808 F.Supp.2d 1, 23 n. 7 (D.D.C.2011)) (internal quotations omitted).
> Relying on Article 4A of the UCC, this Court has concluded that a
> blocked EFT does not "belong to" the terrorist party who was the
> intended beneficiary of the transaction, and thus may not be executed
> on by judgment creditors under TRIA § 201. *Heiser*, 885 F.Supp.2d at

16

448; FN3, *see also Calderon-Cardona v. JP Morgan Chase Bank,*
N.A., 867 F.Supp.2d 389, 400–05 (S.D.N.Y.2011) (Cote, J.).

Opinion Below at *4, JA 306. Thus, despite Iran clearly having a property

interest, for purposes of TRIA, in the blocked assets, the court demanded more –

that Plaintiffs make a pre-attachment showing that Iran had a property interest for

purposes of state law – and concluded that under Article 4A of the UCC, and

applied as a matter of federal common law, they had not done so. The court,

driven by a concern about the assets of innocent parties being attached,

incorporated the reasoning of its earlier opinion in *Heiser.* Opinion Below at *3-4,

JA 305-306.

## B. INTERESTS INNOCENT PARTIES MIGHT HAVE IN BLOCKED ASSETS ARE ACCOMMODATED UNDER TRIA AND UNDER OFAC REGULATIONS.

TRIA accommodates the interests of innocent third parties. It renders

blocked assets "*subject to* execution or attachment in aid of execution." TRIA

201(a) (emphasis supplied). It does not require that assets immediately be

liquidated and turned over to judgment creditors. It contemplates the kind of post-

attachment interpleader action other courts have required before execution actually

can be made. *Hausler I, supra,* 740 F. Supp. at 541("the initiation of turnover

proceedings will provide ample additional opportunity for the assertion of any

superior claims"); *Id.* at n. 15 ("Contrary to Respondents' alarmism regarding

17

inequities that would result to any third parties whose assets may be comingled in the blocked accounts, where a turnover proceeding is commenced by a judgment creditor pursuant to CPLR § 5225(b) against a person in possession or custody of money in which the judgment debtor has an interest, any adverse claimant may intervene in the proceeding in order to assert a superior claim to the blocked assets in question. Accordingly, third parties will be given notice and afforded time to provide written objections asserting any superior claims they may have to the blocked assets.") The district court's conclusion that "virtually all blocked assets—regardless of whether Iran has an ownership interest in them—could be used to compensate victims," *Heiser,* 885 F. Supp. 2d at 440, is clearly wrong.

In addition to its concern about the property of innocent parties being used to satisfy judgments, the district court expressed a separate concern about delay innocent parties might face by attachment of accounts in which they had assets: "[I]f a foreign national living and working in a different country attempted to send money to his personal bank account in Iran, this transfer could be blocked and, under plaintiffs' reading of TRIA, be subject to attachment." *Heiser,* 885 F. Supp. 2d at 440. But the primary problem an innocent party faces is blocking, not attachment, because blocking renders their funds unavailable. TRIA merely incorporates existing standards for blocking; it does not create new ones. Originators have had five and one-half years since these EFTs were blocked to

come forward to make any claim on them under OFAC regulations permitting

innocent parties to do so. We do not know the originators of these transactions, as

the court below denied Plaintiffs the opportunity for discovery that could have

revealed their identities. *See* Plaintiff's Motion for Scheduling Order, Dkt #494.

Given the findings of the Senate regarding Iranian "U-Turn" money laundering

transactions at HBUS, Plaintiffs had good reason to ask for their identities: Iran

could well be at both ends of the transactions. *See* Senate Report at pp. 1-12, 112-

167; JA 359 – 426.

   Attachment does not necessarily cause delay to an innocent party. Primarily,

it provides for ultimate resolution of ownership issues in a judicial forum, rather

than the administrative one provided by OFAC.[5] And, in any case, Congress

clearly determined that any temporary inconvenience that innocent parties might

suffer while ultimate interests and priorities were sorted out was a price worth

paying to thwart terrorist money-laundering and to assure that victims of terrorism

were compensated. "Holding the blocked assets of state sponsors of terrorism in

perpetuity might make sense in the pristine world of high diplomacy, but not in the

real world after the September 11 terrorist attacks on America." 148 Cong. Rec.

S11524, at S11527 (Nov. 19, 2002) (statement of Sen. Harkin).

---

[5] OFAC would be invited to participate in any interpleader action.

19

Protection to innocent parties extends to intermediary banks, like HBUS. Under the interpleader proceedings contemplated by TRIA, implemented by other courts, and posited here, intermediary banks face no specter of responsibility for multiple claims on the same property. That harmonizes with Article 4A of the UCC, which itself contemplates the need for "an orderly unraveling of a funds transfer in the event that the transfer was not completed" and insulates intermediary banks from liability to originators of EFTs "by incorporating a 'privity' requirement." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998). That substantive law might apply in the interpleader proceeding contemplated by TRIA. But it does not apply to the question of whether TRIA provides victims the opportunity to force the need for such a proceeding, or the duty of HBUS to identify assets blocked because of connections to Iran. Such application is not consistent with the opening command of TRIA section 201(a), that "[n]otwithstanding any other provision of law," blocked assets are subject to garnishment by victims of terrorism. To any extent Article 4A is not in harmony with TRIA, it is pre-empted. *Hausler I* at 531.

## C. THE KEY WORD IN THE PHRASE "OF THAT TERRORIST PARTY" IS THAT, NOT OF.

The lower court's focus on "of" in the phrase "of that terrorist party" also is misplaced. The lower court posited the interpretive issue thusly: "The issue is

20

whether Congress' use of the word 'of' requires plaintiff to prove that Iran has [a common law] ownership interest in the Contested Accounts." *Heiser*, 885 F. Supp. 2d at 437-38. It answered in the affirmative: "Applying [*Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, —— U.S. —— –, 131 S.Ct. 2188, 2196 (2011)] and interpreting the word 'of' in TRIA § 201(a) to mean 'belonging to' makes sense: judgment debtors normally pay for whatever caused the adverse judgment against them—third parties do not usually pick up the tab." *Id.* at 438.

The court's conclusion was driven by the mistaken premise that attachment under TRIA automatically leads to execution, absent notice to innocent parties and an opportunity for them to be heard. The text of TRIA on which the lower court was focusing is more comfortably read to identify a particular terrorist party whose blocked assets are subject to execution than it is to require separate proof of common law ownership of a blocked asset.

Section 201(a) of TRIA provides, in relevant part:

Notwithstanding any other provision of law… in every case in which a person has obtained a judgment against *a* terrorist party on a claim based upon an act of terrorism… the blocked assets of *that* terrorist party (including the blocked assets of any agency or instrumentality of *that* terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which *such* terrorist party has been adjudged liable.

21

(emphases added).  After initially using an indefinite word – "a" – to identify one among many terrorist parties, *see United States v. Jain*, 174 F.3d 892, 898 (7th Cir.1999) (indefinite article implies multiple possibilities), Congress used specific words – "that" and "such" – three times to denominate a particular terrorist party. *See Am. Bus. Ass'n  v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (use of definite article "particularizes the subject which it precedes.").  The statute does not say that the property of that terrorist party, in general, is subject to execution; the text refers only to the specific concern of the statute, "blocked assets," which the statute defines.  *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010) (noting that the statute affects blocked assets only of a particular terrorist party, or its instrumentalities).  The text is not ambiguous and does not bear the reading the lower court gave it.  *See Lamie v. U.S. Tr.,* 540 U.S. 526, 535, (2004) ("The sentence may be awkward; yet it is straightforward.") *See also Levin I,* 2011 WL at *17; *Levin II,* 2013 WL at *5-6.

The *Stanford* case, on which the lower court relied, does not bear the weight the lower court placed on it.  In *Levin II,* the court considered a suggestion that, because of the intervening decision in *Stanford*, it revisit its ruling in *Levin I* that blocked assets were available for attachment absent further proof, beyond the blocking order itself, of ownership by a terrorist party.  *Levin II*, 2013 WL at *3.  The court analyzed *Stanford* and found it inapposite.  To the court, *Stanford* itself

22

counseled that it was "interpreting the patent statute in light of the 220 years of

patent law" and it was rejecting an otherwise plausible interpretation because it

would represent a sea change in patent law. *Levin II*, 2013 WL at *6. The court

found that TRIA should "be interpreted within the context of the OFAC

regulations and in a manner consistent with the remedial purpose of the statute."

*Id. See Hausler II*, 845 F.Supp.2d at 569.

TRIA intended the sea change in the law regarding terrorist parties and their

assets that the Supreme Court found Congress did not intend in *Stanford*. Its

correct interpretation should be "harmonious with its scheme and with the general

purposes that Congress manifested." *C.I.R. v. Engle*, 464 U.S. 206, 217 (1984)

(quoting *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297 (1957) (Frankfurter, J.,

concurring in part and dissenting in part)). The "circumstances of the enactment of

particular legislation may be particularly relevant to this inquiry." *C.I.R.*, 464 U.S.

at 217 (quoting *Lion Oil Co.,* 352 U.S. at 297).

TRIA was passed in response to victims of terrorism being thwarted in

gaining access to the assets of terrorist parties. *Weininger v. Castro*, 462 F. Supp.

2d 457, 483 (S.D.N.Y.2006) (quoting H.R. Rep. No. 107-779, at 27 (2002) (Conf.

Rep)). The Second Circuit quoted Senator Harkin, one of the sponsors of TRIA,

describing the statute's purpose:

23

> The purpose of title II is to deal comprehensively with
> the problem of enforcement of judgments issued to
> victims of terrorism in any U.S. court by enabling them
> to satisfy such judgments from the frozen assets of
> terrorist parties.... Title II operates to strip a terrorist state
> of its immunity from execution or attachment in aid of
> execution by making the blocked assets of that terrorist
> state, including the blocked assets of any of its agencies
> or instrumentalities, available for attachment and/or
> execution of a judgment issued against that terrorist state.
> Thus, for purposes of enforcing a judgment against a
> terrorist state, title II does not recognize any juridical
> distinction between a terrorist state and its agencies or
> instrumentalities.

148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin).

Senator Harkin further stated that TRIA "establishes once and for all, that such

judgments are to be enforced against any assets available in the U.S., and that the

executive branch has no statutory authority to defeat such enforcement under

standard judicial processes, except as expressly provided in this act." *Id.*

*Weinstein, supra*, 609 F.3d at 50.

    TRIA is an extraordinary statute serving an extraordinary purpose: contrary

to all norms of law, making the assets of a sovereign available for execution

because that sovereign has stepped outside all norms of law by engaging in

terrorism. That purpose is served by finding that the blocked assets here can be

attached, and subjected to further processes to discern whether they might be

24

available for execution. It is not served by the finding of the lower court, which would "frustrate [TRIA's] core objective." *Hausler II* at 564.

## CONCLUSION

The decision of the lower court should be REVERSED, and this case should be remanded for further consideration of whether HBUS should be sanctioned pursuant to D.C. Code Title 16 §526(b).

Respectfully submitted,

/s/ Thomas Fortune Fay, Esq.
  Thomas Fortune Fay

    /s/ John Vail, Esq.
      John Vail

*Counsel for Appellants Deborah Peterson et al.*
FAY KAPLAN LAW, PA
777 Sixth Street NW, Suite #410
Washington, D.C. 20002
(202) 589-1300

25

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limitation set for in Fed. R. App. P. 32(a)(7)(A)

because it contains 25 pages and 5,926 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief also complies with the

typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements

of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally

spaced typeface using Microsoft Word version 2010 in Times New Roman 14-

point font.

/s/ Thomas Fortune Fay, Esq.
  Thomas Fortune Fay


   /s/ John Vail, Esq.
      John Vail

26

## CERTIFICATE OF SERVICE

I certify that on this 24th day of October, 2013, the foregoing brief has been served

on the following counsel for all parties listed on the attorney service preference

report, via the Court's electronic case filing system:

**Bradford A. Berenson, Esq.**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
*bberenson@sidley.com*

**Rupa Bhattacharyya, Esq.**
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. Box 883
Washington, DC 20530
*rupa.bhattacharyya@usdoj.gov*

**Ferris Ridgely Bond, Esq.**
BOND & NORMAN
777 Sixth Street, NW
Suite 410
Washington, DC 20001
*ferrisbond@bondandnorman.com*

**Karl H. Buch, Esq.**
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
*kbuch@chadbourne.com*

**Varu Chilakamarri, Esq.**
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW

Room 6141
Washington, DC 20001
*varudhini.chilakamarri@usdoj.gov*

**Kay M. Clarke, Esq.**
5450 Burford Street
San Diego, CA 92111
*covelok@aol.com*

**Jacqueline E. Coleman Snead, Esq.**
U.S. DEPARTMENT OF JUSTICE
Civil Division
20 Massachusetts Avenue, NW
Room 7218
Washington, DC 20530
*jacqueline.snead@usdoj.gov*

**David J. Cook, Esq.**
COOK COLLECTION ATTORNEYS, P.L.C.
165 Fell Street
San Francisco, CA 94102-5106
*cook@squeezebloodfromturnip.com*

**Joseph Peter Drennan, Esq.**
JOSEPH PETER DRENNAN, ATTORNEY-AT-LAW
218 North Lee Street
3rd Floor
Alexandria, VA 22314
*joseph@josephpeterdrennan.com*

**Robert Peter Feeney, Esq.**
ROBERT P. FEENEY, ESQUIRE
702 Russell Avenue
Suite 300
Gaithersburg, MD 20877
*bobfeeney11@gmail.com*

**Griffith L. Green, Esq.**
SIDLEY AUSTIN, LLP
1501 K Street, NW
Washington, DC 20005-1401
*ggreen@sidley.com*

**James H. Hulme, Esq.**
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
*hulme.james@arentfox.com*

**Anthony J. LaSpada, Esq.**
1802 North Morgan Street
Tampa, FL 33602
*ajl@laspada.com*

**Lynn Yuhee Lee, Esq.**
U.S. DEPARTMENT OF JUSTICE
Civil Division-Federal Programs Branch
P.O. Box 883
Washington, DC 20044
*lynn.lee@usdoj.gov*

**Robert W. Littleton, Esq.**
LITTLETON JOYCE UGHETTA PARK & KELLY, LLP
39 Broadway
34th Floor
New York, NY 10006
*robert.littleton@littletonjoyce.com*

**Tuna Mecit, Esq.**
4101 Albemarle Street, NW
Suite 422
Washington, DC 20016
*tmecit@yahoo.com*

29

**Jane Carol Norman, Esq.**
BOND & NORMAN, PLLC
777 Sixth St. NW #410
Washington, DC 20001
*jnorman425@aol.com*

**Alex Young K. Oh, Esq.**
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
5th Floor
Washington, DC 20006
*aoh@paulweiss.com*

**Frank Panopoulos, Esq.**
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
*fpanopoulos@whitecase.com*

**Steven R. Perles, Esq.**
PERLES LAW FIRM, P.C.
1146 19th Street, NW
5th Floor
Washington, DC 20036
*sperles@perleslaw.com*

**Heather R. Phillips, Esq.**
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 7222
Washington, DC 20001
*heather.phillips@usdoj.gov*

**Allen Louis Rothenberg, Esq.**
1420 Walnut Street

Philadelphia, PA 19102
*allen@injurylawyer.com*

**Francis A. Vasquez, Jr., Esq.**
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
*fvasquez@whitecase.com*

**Eric R. Womack, Esq.**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
*eric.womack@usdoj.gov*

**Bruce E. Clark**
SULLIVAN & CROMWELL, L.L.P.
125 Broad Street
New York, New York
10004-2498
(212) 558-4000
Facsimile: (212) 558-3588
*clarkb@sullcrom.com*


/s/ Thomas Fortune Fay, Esq.
  Thomas Fortune Fay


   /s/ John Vail, Esq.
      John Vail


31

## Addendum Table of Contents

**Regulations**

31 C.F.R. § 501.801……………………………………………..……......A1

31 CFR §501.806………………………………………………...…...……A5

31 CFR § 535.502……………………………………………………...….A7

31 CFR §544.101……………………………………………………A9

31 CFR §544.201……………………………………………………..A10

31 CFR §544.305……………………………………...…………A12

31 CFR §544.308…………………………………………..……A13

31 CFR §594.101…………………………………………………....A14

31 CFR §594.201…………………………………………………..…A15

31 CFR §594.306…………………………………………………..…A18

31 CFR §594.309……………………………………………………A19

**Statutes**

D.C. Code § 16-526(b)……………………………………...…….…A20

International Emergency Economic Powers Act,
     50 USC 1701 *et. seq* (provisions related to
     Executive Orders on Iran)………………………………..……......A21

Terrorism Risk Insurance Act (TRIA)
     Pub. L. No. 107-297 (2002) (Sections 201(a), (d) …………………...A25

**Other Legislative Materials**

Global Terrorism Sanctions Regulations,

68 Fed. Reg. 34196 (6 Jun. 2003)...............................................A27

Weapons of Mass Destruction Proliferators Sanctions Regulations,
74 Fed. Reg. 16771 (13 Apr. 2009) ............................................A46

§ 501.801 Licensing., 31 C.F.R. § 501.801

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 501. Reporting, Procedures and Penalties Regulations (Refs & Annos)
          Subpart E. Procedures (Refs & Annos)

31 C.F.R. § 501.801

§ 501.801 Licensing.

Effective: January 12, 2012

Currentness

(a) General licenses. General licenses have been issued authorizing under appropriate terms and conditions certain types of transactions which are subject to the prohibitions contained in this chapter. General licenses are set forth in subpart E of each part contained in this chapter, and they also may be available through the following page on OFAC's Web site: http://www.treasury.gov/resource-center/sanctions/programs/Pages/Programs.aspx. General licenses may also be issued authorizing under appropriate terms and conditions certain types of transactions which are subject to prohibitions contained in economic sanctions programs the implementation and administration of which have been delegated to the Director of the Office of Foreign Assets Control but which are not yet codified in this chapter. It is the policy of the Office of Foreign Assets Control not to grant applications for specific licenses authorizing transactions to which the provisions of an outstanding general license are applicable. Persons availing themselves of certain general licenses may be required to file reports and statements in accordance with the instructions specified in those licenses. Failure to file such reports or statements will nullify the authority of the general license.

(b) Specific licenses--

   (1) General course of procedure. Transactions subject to the prohibitions contained in this chapter, or to prohibitions the implementation and administration of which have been delegated to the Director of the Office of Foreign Assets Control, which are not authorized by general license may be effected only under specific licenses.

   (2) Applications for specific licenses. Original signed applications for specific licenses to engage in any transactions prohibited by or pursuant to this chapter or sanctions programs that have been delegated to the Director of the Office of Foreign Assets Control for implementation and administration must be filed by mail or courier. Applications will not be accepted by fax or electronically, unless otherwise authorized. Applications may be submitted in letter form with the exception of license applications for the unblocking of funds transfers. Applications for the unblocking of funds transfers must be submitted using TD–F 90–22.54, "Application for the Release of Blocked Funds," accompanied by two complete copies of the entire submission. The form, which requires information regarding the date of the blocking, the financial institutions involved in the transfer, and the beneficiary and amount of the transfer, may be obtained from the OFAC Internet Home Page: http://www.treas.gov/ofac, the OFAC fax-on-demand service: 202/622–0077, or the Compliance Programs Division, Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220. Any person having an interest in a transaction or proposed transaction may file an application for a license authorizing such transaction.

   (3) Information to be supplied. The applicant must supply all information specified by relevant instructions and/or forms, and must fully disclose the names of all parties who are concerned with or interested in the proposed transaction.

A1

§ 501.801 Licensing., 31 C.F.R. § 501.801

If the application is filed by an agent, the agent must disclose the name of his principal(s). Such documents as may be relevant shall be attached to each application as a part of such application, except that documents previously filed with the Office of Foreign Assets Control may, where appropriate, be incorporated by reference in such application. Applicants are required to supply their taxpayer identifying number pursuant to 31 U.S.C. 7701, which number may be used for purposes of collecting and reporting on any delinquent amounts arising out of the applicant's relationship with the United States Government. Applicants may be required to furnish such further information as is deemed necessary to a proper determination by the Office of Foreign Assets Control. Any applicant or other party in interest desiring to present additional information may do so at any time before or after decision. Arrangements for oral presentation should be made with the Office of Foreign Assets Control.

(4) Effect of denial. The denial of a license does not preclude the reopening of an application or the filing of a further application. The applicant or any other party in interest may at any time request explanation of the reasons for a denial by correspondence or personal interview.

(5) Reports under specific licenses. As a condition for the issuance of any license, the licensee may be required to file reports with respect to the transaction covered by the license, in such form and at such times and places as may be prescribed in the license or otherwise.

(6) Issuance of license. Licenses will be issued by the Office of Foreign Assets Control acting on behalf of the Secretary of the Treasury or licenses may be issued by the Secretary of the Treasury acting directly or through any specifically designated person, agency, or instrumentality.

(7) Address. License applications, reports, and inquiries should be addressed to the appropriate division or individual within the Office of Foreign Assets Control, or to its Director, at the following address: Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW--Annex, Washington, DC 20220.

(c) Registration of nongovernmental organizations--

(1) Purpose of registration. For those parts of this chapter specifically authorizing the registration of nongovernmental organizations ("NGOs"), registration numbers may be issued on a case-by-case basis to NGOs involved in humanitarian or religious activities in countries or geographic areas subject to economic sanctions pursuant to this chapter V. A registration number authorizes certain transactions by or on behalf of the registered NGO otherwise prohibited by the specific part with respect to which the registration number is issued, including the exportation of goods, services, and funds to the country or geographic area subject to such part for the purpose of relieving human suffering. The transactions authorized for registered NGOs either will be specified by the statement of licensing policy in the part under which the registration number is issued or by the Office of Foreign Assets Control letter issuing the registration number.

(2) Application information to be supplied. Applications for registration numbers should be submitted to the Compliance Programs Division, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW., Annex, Washington, DC 20220, or by facsimile to (202) 622–2426, and must include:

(i) The organization's name in English, in the language of origin, and any acronym or other names used to identify the organization;

(ii) Address and phone number of the organization's headquarters location;

§ 501.801 Licensing., 31 C.F.R. § 501.801

(iii) Full name in English, in the language of origin, and any acronym or other names used, as well as nationality, citizenship, current country of residence, place and date of birth for key staff at the organization's headquarters, such as the chairman and board members, president, director, etc.;

(iv) Identification of field offices or partner offices elsewhere, including addresses, phone numbers, and organizational names used, as well as the identification of the senior officer(s) at these locations, including the person's name, position, nationality, citizenship, and date of birth (names of individuals and organizations shall be provided in English, in the language of origin, and shall include any acronym or other names used to identify the individuals or organizations);

(v) Identification of subcontracting organizations, if any, to the extent known or contemplated at the time of the application;

(vi) Existing sources of income, such as official grants, private endowments, commercial activities;

(vii) Financial institutions that hold deposits on behalf of or extend lines of credit to the organization (names of individuals and organizations shall be provided in English, in the language of origin, and shall include any acronym or other names used to identify the individuals or organizations);

(viii) Independent accounting firms, if employed in the production of the organization's financial statements (names of individuals and organizations shall be provided in English, in the language of origin, and shall include any acronym or other names used to identify the individuals or organizations);

(ix) A detailed description of the organization's humanitarian or religious activities and projects in countries or geographic areas subject to economic sanctions pursuant to this chapter V;

(x) Most recent official registry documents, annual reports, and annual filings with the pertinent government, as applicable; and

(xi) Names and addresses of organizations to which the applicant currently provides or proposes to provide funding, services or material support, to the extent known at the time of the vetting, as applicable.

(3) Use of registration number. Registered NGOs conducting transactions authorized by their registrations to support their humanitarian or religious activities pursuant to any part of this chapter should reference the registration number on all payments and funds transfers and on all related documentation, including all purchasing, shipping, and financing documents.

(4) Limitations. Registered NGOs are not authorized to make remittances from blocked accounts. Registration numbers are not transferable and may be revoked or modified at any time at the discretion of the Director, Office of Foreign Assets Control. Registration numbers do not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or any other agency (including reporting requirements) applicable to the transaction(s) herein authorized, nor does it release the Registrant or third parties from civil or criminal liability for violation of any law or regulation.

(5) Prior numbers. Registration numbers already issued remain in effect.

§ 501.801 Licensing., 31 C.F.R. § 501.801

**Credits**
[65 FR 10707, Feb. 29, 2000; 66 FR 2728, Jan. 11, 2001; 77 FR 1864, Jan. 12, 2012]

SOURCE: 62 FR 45101, Aug. 25, 1997; 65 FR 41335, July 5, 2000; 68 FR 53641, Sept. 11, 2003; 68 FR 53642, Sept. 11, 2003; 73 FR 51936, Sept. 8, 2008, unless otherwise noted.

AUTHORITY: 8 U.S.C. 1189; 18 U.S.C. 2332d, 2339B; 19 U.S.C. 3901–3913; 21 U.S.C. 1901–1908; 22 U.S.C. 287c; 22 U.S.C. 2370(a), 6009, 6032, 7205; 28 U.S.C. 2461 note; 31 U.S.C. 321(b); 50 U.S.C. 1701–1706; 50 U.S.C. App. 1–44.

Notes of Decisions (7)

Current through October 10, 2013; 78 FR 61990

**End of Document**                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 501.806 Procedures for unblocking funds believed to have..., 31 C.F.R. § 501.806

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 501. Reporting, Procedures and Penalties Regulations (Refs & Annos)
          Subpart E. Procedures (Refs & Annos)

31 C.F.R. § 501.806

§ 501.806 Procedures for unblocking funds believed to have been blocked due to mistaken identity.

Currentness

When a transaction results in the blocking of funds at a financial institution pursuant to the applicable regulations of this chapter and a party to the transaction believes the funds have been blocked due to mistaken identity, that party may seek to have such funds unblocked pursuant to the following administrative procedures:

(a) Any person who is a party to the transaction may request the release of funds which the party believes to have been blocked due to mistaken identity.

(b) Requests to release funds which a party believes to have been blocked due to mistaken identity must be made in writing and addressed to the Office of Foreign Assets Control, Compliance Programs Division, 1500 Pennsylvania Avenue, NW--Annex, Washington, DC 20220, or sent by facsimile transmission to the Compliance Programs Division at 202/622-1657.

(c) The written request to release funds must include the name, address, telephone number, and (where available) fax number of the party seeking the release of the funds. For individuals, the inclusion of a social security number is voluntary but will facilitate resolution of the request. For corporations or other entities, the application should include its principal place of business, the state of incorporation or organization, and the name and telephone number of the appropriate person to contact regarding the application.

(d) A request to release funds should include the following information, where known, concerning the transaction:

(1) The name of the financial institution in which the funds are blocked;

(2) The amount blocked;

(3) The date of the blocking;

(4) The identity of the original remitter of the funds and any intermediary financial institutions;

(5) The intended beneficiary of the blocked transfer;

A5

§ 501.806 Procedures for unblocking funds believed to have..., 31 C.F.R. § 501.806

(6) A description of the underlying transaction including copies of related documents (e.g., invoices, bills of lading, promissory notes, etc.);

(7) The nature of the applicant's interest in the funds; and

(8) A statement of the reasons why the applicant believes the funds were blocked due to mistaken identity.

(e) Upon receipt of the materials required by paragraph (d) of this section, OFAC may request additional material from the applicant concerning the transaction pursuant to § 501.602.

(f) Following review of all applicable submissions, the Director of the Office of Foreign Assets Control will determine whether to release the funds. In the event the Director determines that the funds should be released, the Office of Foreign Assets Control will direct the financial institution to return the funds to the appropriate party.

(g) For purposes of this section, the term "financial institution" shall include a banking institution, depository institution or United States depository institution, domestic bank, financial institution or U.S. financial institution, as those terms are defined in the applicable part of this chapter.

**Credits**
[62 FR 52495, Oct. 8, 1997]

SOURCE: 62 FR 45101, Aug. 25, 1997; 65 FR 41335, July 5, 2000; 68 FR 53641, Sept. 11, 2003; 68 FR 53642, Sept. 11, 2003; 73 FR 51936, Sept. 8, 2008, unless otherwise noted.

AUTHORITY: 8 U.S.C. 1189; 18 U.S.C. 2332d, 2339B; 19 U.S.C. 3901–3913; 21 U.S.C. 1901–1908; 22 U.S.C. 287c; 22 U.S.C. 2370(a), 6009, 6032, 7205; 28 U.S.C. 2461 note; 31 U.S.C. 321(b); 50 U.S.C. 1701–1706; 50 U.S.C. App. 1–44.

Notes of Decisions (8)

Current through October 10, 2013; 78 FR 61990

**End of Document**                                        © 2013 Thomson Reuters. No claim to original U.S. Government Works

§ 535.502 Effect of license or authorization., 31 C.F.R. § 535.502

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 535. Iranian Assets Control Regulations (Refs & Annos)
          Subpart E. Licenses, Authorizations and Statements of Licensing Policy

31 C.F.R. § 535.502

§ 535.502 Effect of license or authorization.

Currentness

(a) No license or other authorization contained in this part or otherwise issued by or under the direction of the Secretary of the Treasury pursuant to section 203 of the International Emergency Economic Powers Act, shall be deemed to authorize or validate any transaction effected prior to the issuance thereof, unless such license or other authorization specifically so provides.

(b) No regulation, ruling, instruction, or license authorizes a transaction prohibited under this part unless the regulation, ruling, instruction, or license is issued by the Treasury Department and specifically refers to this part. No regulation, ruling, instruction or license referring to this part shall be deemed to authorize any transaction prohibited by any provision of Parts 500, 505, 515, 520 or 530 of this chapter unless the regulation, ruling, instruction or license specifically refers to such provision.

(c) Any regulation, ruling, instruction or license authorizing a transaction otherwise prohibited under this part has the effect of removing a prohibition or prohibitions in Subpart B from the transaction, but only to the extent specifically stated by its terms. Unless the regulation, ruling, instruction or license otherwise specifies, such an authorization does not create any right, duty, obligation, claim, or interest in, or with respect to, any property which would not otherwise exist under ordinary principles of law.

**Credits**
[44 FR 66833, Nov. 21, 1979, as amended at 44 FR 75353, Dec. 19, 1979]

SOURCE: 44 FR 65956, Nov. 15, 1979; 61 FR 43461, Aug. 23, 1996; 61 FR 54938, Oct. 23, 1996; 62 FR 45106, Aug. 25, 1997; 71 FR 29252, May 22, 2006; 73 FR 32651, June 10, 2008, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 18 U.S.C. 2332d; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub.L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub.L. 110–96, 121 Stat. 1011; E.O. 12170, 44 FR 65729, 3 CFR, 1979 Comp., p. 457; E.O. 12205, 45 FR 24099, 3 CFR, 1980 Comp., p. 248; E.O. 12211, 45 FR 26685, 3 CFR, 1980 Comp., p. 253; E.O. 12276, 46 FR 7913, 3 CFR, 1981 Comp., p. 104; E.O. 12279, 46 FR 7919, 3 CFR, 1981 Comp., p. 109; E.O. 12280, 46 FR 7921, 3 CFR, 1981 Comp., p. 110; E.O. 12281, 46 FR 7923, 3 CFR, 1981 Comp., p. 110; E.O. 12282, 46 FR 7925, 3 CFR, 1981 Comp., p. 113; E.O. 12283, 46 FR 7927, 3 CFR, 1981 Comp., p. 114; and E.O. 12294, 46 FR 14111, 3 CFR, 1981 Comp., p. 139.

Notes of Decisions (1)

§ 535.502 Effect of license or authorization., 31 C.F.R. § 535.502

Current through October 10, 2013; 78 FR 61990

**End of Document**                                      © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 544.101 Relation of this part to other laws and regulations., 31 C.F.R. § 544.101

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 544. Weapons of Mass Destruction Proliferators Sanctions Regulations (Refs & Annos)
        Subpart A. Relation of This Part to Other Laws and Regulations

31 C.F.R. § 544.101

§ 544.101 Relation of this part to other laws and regulations.

Effective: April 13, 2009

Currentness

This part is separate from, and independent of, the other parts of this chapter, with the exception of part 501 of this chapter, the recordkeeping and reporting requirements and license application and other procedures of which apply to this part. Actions taken pursuant to part 501 of this chapter with respect to the prohibitions contained in this part are considered actions taken pursuant to this part. Differing foreign policy and national security circumstances may result in differing interpretations of similar language among the parts of this chapter. No license or authorization contained in or issued pursuant to those other parts authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to any other provision of law or regulation authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to this part relieves the involved parties from complying with any other applicable laws or regulations.

Note to § 544.101: The sanctions implemented pursuant to the Weapons of Mass Destruction Trade Control Regulations set forth in part 539 of this chapter are separate and distinct from the sanctions implemented pursuant to this part, even though both programs have been imposed pursuant to the same declaration of national emergency in Executive Order 12938 of November 14, 1994. Accordingly, a "designated foreign person" whose goods, technology, or services are prohibited from being imported into the United States under part 539 is not necessarily a person whose property and interests in property are blocked pursuant to § 544.201(a). Consequently, the property and interests in property of a "designated foreign person" under part 539 are not blocked, unless the "designated foreign person" has separately become a person whose property and interests in property are blocked pursuant to § 544.201(a) or any other part of 31 CFR chapter V. Note, however, that the importation into the United States of goods, technology, or services (other than information or informational materials) produced or provided by a "designated foreign person" under part 539 is prohibited by that part.

SOURCE: 74 FR 16773, April 13, 2009, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Public Law 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Public Law 110–96, 121 Stat. 1011; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13094, 63 FR 40803, 3 CFR, 1998 Comp., p. 200; E.O. 13382, 70 FR 38567, 3 CFR, 2005 Comp., p. 170.

Current through October 10, 2013; 78 FR 61990

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 544.201 Prohibited transactions involving blocked property., 31 C.F.R. § 544.201

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 544. Weapons of Mass Destruction Proliferators Sanctions Regulations (Refs & Annos)
        Subpart B. Prohibitions

31 C.F.R. § 544.201

§ 544.201 Prohibited transactions involving blocked property.

Effective: June 30, 2011

Currentness

(a) Except as authorized by regulations, orders, directives, rulings, instructions, licenses or otherwise, and notwithstanding any contracts entered into or any license or permit granted prior to the effective date, all property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons, including their overseas branches, of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in:

(1) Any person listed in the Annex to Executive Order 13382 of June 28, 2005 (70 FR 38567, July 1, 2005);

(2) Any foreign person determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Attorney General, and other relevant agencies, to have engaged, or attempted to engage, in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery (including missiles capable of delivering such weapons), including any efforts to manufacture, acquire, possess, develop, transport, transfer or use such items, by any person or foreign country of proliferation concern;

(3) Any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to have provided, or attempted to provide, financial, material, technological or other support for, or goods or services in support of, any activity or transaction described in paragraph (a)(2) of this section, or any person whose property and interests in property are blocked pursuant to this section; and

(4) Any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this section.

Note 1 to paragraph (a) of § 544.201: The names of persons listed in or designated pursuant to Executive Order 13382, whose property and interests in property therefore are blocked pursuant to paragraph (a) of this section, are published in the Federal Register and incorporated into the Office of Foreign Assets Control's Specially Designated Nationals and Blocked Persons List ("SDN List") with the identifier "[NPWMD]." The SDN List is accessible through the following page on the Office of Foreign Assets Control's Web site: http://www.treasury.gov/sdn. Additional information pertaining to the SDN List can be found in Appendix A to this chapter. See § 544.411 concerning entities that may not be listed on the SDN List but whose property and interests in property are nevertheless blocked pursuant to paragraph (a) of this section.

Note 2 to paragraph (a) of § 544.201: The International Emergency Economic Powers Act (50 U.S.C. 1701–1706), in Section

**§ 544.201 Prohibited transactions involving blocked property., 31 C.F.R. § 544.201**

203 (50 U.S.C. 1702), authorizes the blocking of property and interests in property of a person during the pendency of an investigation. The names of persons whose property and interests in property are blocked pending investigation pursuant to paragraph (a) of this section also are published in the Federal Register and incorporated into the SDN List with the identifier "[BPI–NPWMD]."

Note 3 to paragraph (a) of § 544.201: Sections 501.806 and 501.807 of this chapter describe the procedures to be followed by persons seeking, respectively, the unblocking of funds that they believe were blocked due to mistaken identity, or administrative reconsideration of their status as persons whose property and interests in property are blocked pursuant to paragraph (a) of this section.

(b) The prohibitions in paragraph (a) of this section include, but are not limited to, prohibitions on the following transactions when engaged in by a United States person or within the United States:

(1) The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to paragraph (a) of this section; and

(2) The receipt of any contribution or provision of funds, goods, or services from any person whose property and interests in property are blocked pursuant to paragraph (a) of this section.

(c) Unless otherwise authorized by this part or by a specific license expressly referring to this section, any dealing in any security (or evidence thereof) held within the possession or control of a U.S. person and either registered or inscribed in the name of, or known to be held for the benefit of, or issued by, any person whose property and interests in property are blocked pursuant to paragraph (a) of this section is prohibited. This prohibition includes but is not limited to the transfer (including the transfer on the books of any issuer or agent thereof), disposition, transportation, importation, exportation, or withdrawal of, or the endorsement or guaranty of signatures on, any such security on or after the effective date. This prohibition applies irrespective of the fact that at any time (whether prior to, on, or subsequent to the effective date) the registered or inscribed owner of any such security may have or might appear to have assigned, transferred, or otherwise disposed of the security.

**Credits**
[76 FR 38537, June 30, 2011]

SOURCE: 74 FR 16773, April 13, 2009, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Public Law 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Public Law 110–96, 121 Stat. 1011; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13094, 63 FR 40803, 3 CFR, 1998 Comp., p. 200; E.O. 13382, 70 FR 38567, 3 CFR, 2005 Comp., p. 170.

Current through October 10, 2013; 78 FR 61990

**End of Document**                                        © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 544.305 Interest., 31 C.F.R. § 544.305

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 544. Weapons of Mass Destruction Proliferators Sanctions Regulations (Refs & Annos)
        Subpart C. General Definitions

### 31 C.F.R. § 544.305

### § 544.305 Interest.

### Effective: April 13, 2009

Currentness

Except as otherwise provided in this part, the term interest, when used with respect to property (e.g., "an interest in property"), means an interest of any nature whatsoever, direct or indirect.

SOURCE: 74 FR 16773, April 13, 2009, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Public Law 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Public Law 110–96, 121 Stat. 1011; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13094, 63 FR 40803, 3 CFR, 1998 Comp., p. 200; E.O. 13382, 70 FR 38567, 3 CFR, 2005 Comp., p. 170.

Current through October 10, 2013; 78 FR 61990

End of Document                                                      © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 544.308 Property; property interest., 31 C.F.R. § 544.308

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 544. Weapons of Mass Destruction Proliferators Sanctions Regulations (Refs & Annos)
        Subpart C. General Definitions

31 C.F.R. § 544.308

§ 544.308 Property; property interest.

Effective: April 13, 2009

Currentness

The terms property and property interest include, but are not limited to, money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling agreements, services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent.

SOURCE: 74 FR 16773, April 13, 2009, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Public Law 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Public Law 110–96, 121 Stat. 1011; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13094, 63 FR 40803, 3 CFR, 1998 Comp., p. 200; E.O. 13382, 70 FR 38567, 3 CFR, 2005 Comp., p. 170.

Current through October 10, 2013; 78 FR 61990

**End of Document** © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 544.502 Effect of license or authorization., 31 C.F.R. § 544.502

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 544. Weapons of Mass Destruction Proliferators Sanctions Regulations (Refs & Annos)
        Subpart E. Licenses, Authorizations and Statements of Licensing Policy

31 C.F.R. § 544.502

§ 544.502 Effect of license or authorization.

Effective: April 13, 2009

Currentness

(a) No license or other authorization contained in this part, or otherwise issued by or under the direction of the Director of the Office of Foreign Assets Control, authorizes or validates any transaction effected prior to the issuance of such license or other authorization, unless specifically provided in such license or authorization.

(b) No regulation, ruling, instruction, or license authorizes any transaction prohibited under this part unless the regulation, ruling, instruction or license is issued by the Office of Foreign Assets Control and specifically refers to this part. No regulation, ruling, instruction, or license referring to this part shall be deemed to authorize any transaction prohibited by any other provision of this chapter unless the regulation, ruling, instruction, or license specifically refers to such provision.

(c) Any regulation, ruling, instruction, or license authorizing any transaction otherwise prohibited under this part has the effect of removing a prohibition contained in this part from the transaction, but only to the extent specifically stated by its terms. Unless the regulation, ruling, instruction, or license otherwise specifies, such an authorization does not create any right, duty, obligation, claim, or interest in, or with respect to, any property that would not otherwise exist under ordinary principles of law.

SOURCE: 74 FR 16773, April 13, 2009, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Public Law 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Public Law 110–96, 121 Stat. 1011; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13094, 63 FR 40803, 3 CFR, 1998 Comp., p. 200; E.O. 13382, 70 FR 38567, 3 CFR, 2005 Comp., p. 170.

Current through October 18, 2013; 78 FR 62332

End of Document                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 594.101 Relation of this part to other laws and regulations., 31 C.F.R. § 594.101

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 594. Global Terrorism Sanctions Regulations (Refs & Annos)
          Subpart A. Relation of This Part to Other Laws and Regulations

31 C.F.R. § 594.101

§ 594.101 Relation of this part to other laws and regulations.

Currentness

This part is separate from, and independent of, the other parts of this chapter, with the exception of part 501 of this chapter, the recordkeeping and reporting requirements and license application and other procedures of which apply to this part. Actions taken pursuant to part 501 of this chapter with respect to the prohibitions contained in this part are considered actions taken pursuant to this part. Differing foreign policy and national security circumstances may result in differing interpretations of similar language among the parts of this chapter. No license or authorization contained in or issued pursuant to those other parts authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to any other provision of law or regulation authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to this part relieves the involved parties from complying with any other applicable laws or regulations.

SOURCE: 68 FR 34197, June 6, 2003; 68 FR 53660, Sept. 11, 2003; 71 FR 29253, May 22, 2006; 72 FR 61518, Oct. 31, 2007; 73 FR 32656, June 10, 2008; 78 FR 38575, June 27, 2013, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 22 U.S.C. 287c; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub.L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub.L. 110–96, 121 Stat. 1011; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; E.O. 13268, 67 FR 44751, 3 CFR, 2002 Comp., p. 240; E.O. 13284, 68 FR 4075, 3 CFR, 2003 Comp., p. 161; E.O. 13372, 70 FR 8499, 3 CFR, 2006 Comp., p. 159.

Current through October 10, 2013; 78 FR 61990

End of Document                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 594.201 Prohibited transactions involving blocked property., 31 C.F.R. § 594.201

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 594. Global Terrorism Sanctions Regulations (Refs & Annos)
          Subpart B. Prohibitions

31 C.F.R. § 594.201

§ 594.201 Prohibited transactions involving blocked property.

Effective: June 27, 2013

Currentness

(a) Except as authorized by statutes, regulations, orders, directives, rulings, instructions, licenses or otherwise, and notwithstanding any contracts entered into or any license or permit granted prior to the effective date, property and interests in property of the following persons that are in the United States, that hereafter come within the United States, or that hereafter come within the possession or control of U.S. persons, including their overseas branches, are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in:

(1) Foreign persons listed in the Annex to Executive Order 13224 of September 23, 2001, as may be amended;

(2) Foreign persons determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Secretary of Homeland Security and the Attorney General, to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States;

(3) Persons determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, to be owned or controlled by, or to act for or on behalf of, any person whose property or interests in property are blocked pursuant to paragraphs (a)(1), (a)(2), (a)(3), or (a)(4)(i) of this section; or

(4) Except as provided in section 5 of Executive Order 13224, any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General:

(i) To assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of:

(A) Acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States, or

(B) Any person whose property or interests in property are blocked pursuant to paragraph (a) of this section; or

§ 594.201 Prohibited transactions involving blocked property., 31 C.F.R. § 594.201

(ii) To be otherwise associated with any person whose property or interests in property are blocked pursuant to paragraphs (a)(1), (a)(2), (a)(3), or (a)(4)(i) of this section.

Note 1 to paragraph (a). Section 5 of Executive Order 13224, as amended, provides that, with respect to those persons designated pursuant to paragraph (a)(4) of this section, the Secretary of the Treasury, in the exercise of his discretion and in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, may take such other actions than the complete blocking of property or interests in property as the President is authorized to take under the International Emergency Economic Powers Act and the United Nations Participation Act if the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, deems such other actions to be consistent with the national interests of the United States, considering such factors as he deems appropriate.

Note 2 to paragraph (a) of § 594.201: The names of persons whose property and interests in property are blocked pursuant to § 594.201(a) are published in the Federal Register and incorporated into the Office of Foreign Assets Control's Specially Designated Nationals and Blocked Persons List ("SDN List") with the identifier "[SDGT]." The SDN List is accessible through the following page on the Office of Foreign Assets Control's Web site: http://www.treasury.gov/sdn. Additional information pertaining to the SDN List can be found in appendix A to this chapter. See § 594.412 concerning entities that may not be listed on the SDN List but whose property and interests in property are nevertheless blocked pursuant to paragraph (a) of this section.

Note 3 to paragraph (a) of § 594.201: Sections 501.806 and 501.807 of this chapter describe the procedures to be followed by persons seeking, respectively, the unblocking of funds that they believe were blocked due to mistaken identity, or administrative reconsideration of their status as persons whose property and interests in property are blocked pursuant to paragraph (a) of this section.

(b) Unless otherwise authorized by this part or by a specific license expressly referring to this section, any dealing in any security (or evidence thereof) held within the possession or control of a U.S. person and either registered or inscribed in the name of or known to be held for the benefit of any person whose property or interests in property are blocked pursuant to § 594.201(a) is prohibited. This prohibition includes but is not limited to the transfer (including the transfer on the books of any issuer or agent thereof), disposition, transportation, importation, exportation, or withdrawal of any such security or the endorsement or guaranty of signatures on any such security. This prohibition applies irrespective of the fact that at any time (whether prior to, on, or subsequent to the effective date) the registered or inscribed owner of any such security may have or might appear to have assigned, transferred, or otherwise disposed of the security.

Note 1 to § 594.201: The International Emergency Economic Powers Act (50 U.S.C. 1701–1706), in Section 203 (50 U.S.C. 1702), authorizes the blocking of property and interests in property of a person during the pendency of an investigation. The names of persons whose property and interests in property are blocked pending investigation pursuant to paragraph (a) of this section also are published in the Federal Register and incorporated into the SDN List with the identifier "[BPI–PA]" or "[BPI–SDGT]." The scope of the property or interests in property blocked during the pendency of an investigation may be more limited than the scope of the blocking set forth in § 594.201(a). Inquiries regarding the scope of any such blocking should be directed to OFAC's Sanctions Compliance & Evaluation Division at 202/622–2490.

Note 2 to § 594.201. The prohibitions set forth in this part are separate from and in addition to other parts of 31 CFR chapter V, including but not limited to the Terrorism Sanctions Regulations (part 595), the Terrorism List Government Sanctions Regulations (part 596), and the Foreign Terrorist Organizations Sanctions Regulations (part 597). The prohibitions set forth in this part also are separate and apart from the criminal prohibition, set forth at 18 U.S.C. 2339B, against providing material support or resources to foreign terrorist organizations designated pursuant to section 219 of the Immigration and Nationality Act, as amended.

Credits
[72 FR 4206, Jan. 30, 2007; 76 FR 38544, June 30, 2011; 78 FR 38575, June 27, 2013]

SOURCE: 68 FR 34197, June 6, 2003; 68 FR 53660, Sept. 11, 2003; 71 FR 29253, May 22, 2006; 72 FR 61518, Oct. 31,

**§ 594.201 Prohibited transactions involving blocked property., 31 C.F.R. § 594.201**

2007; 73 FR 32656, June 10, 2008; 78 FR 38575, June 27, 2013, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 22 U.S.C. 287c; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub.L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub.L. 110–96, 121 Stat. 1011; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; E.O. 13268, 67 FR 44751, 3 CFR, 2002 Comp., p. 240; E.O. 13284, 68 FR 4075, 3 CFR, 2003 Comp., p. 161; E.O. 13372, 70 FR 8499, 3 CFR, 2006 Comp., p. 159.

Current through October 10, 2013; 78 FR 61990

**End of Document**    © 2013 Thomson Reuters. No claim to original U.S. Government Works

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 594.306 Interest., 31 C.F.R. § 594.306

Code of Federal Regulations
    Title 31. Money and Finance: Treasury
        Subtitle B. Regulations Relating to Money and Finance
            Chapter V. Office of Foreign Assets Control, Department of the Treasury
                Part 594. Global Terrorism Sanctions Regulations (Refs & Annos)
                Subpart C. General Definitions

31 C.F.R. § 594.306

§ 594.306 Interest.

Currentness

Except as otherwise provided in this part, the term interest when used with respect to property (e.g., "an interest in property") means an interest of any nature whatsoever, direct or indirect.

SOURCE: 68 FR 34197, June 6, 2003; 68 FR 53660, Sept. 11, 2003; 71 FR 29253, May 22, 2006; 72 FR 61518, Oct. 31, 2007; 73 FR 32656, June 10, 2008; 78 FR 38575, June 27, 2013, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 22 U.S.C. 287c; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub.L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub.L. 110–96, 121 Stat. 1011; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; E.O. 13268, 67 FR 44751, 3 CFR, 2002 Comp., p. 240; E.O. 13284, 68 FR 4075, 3 CFR, 2003 Comp., p. 161; E.O. 13372, 70 FR 8499, 3 CFR, 2006 Comp., p. 159.

Current through October 10, 2013; 78 FR 61990

**End of Document**                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 594.309 Property; property interest., 31 C.F.R. § 594.309

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
    Subtitle B. Regulations Relating to Money and Finance
      Chapter V. Office of Foreign Assets Control, Department of the Treasury
        Part 594. Global Terrorism Sanctions Regulations (Refs & Annos)
          Subpart C. General Definitions

31 C.F.R. § 594.309

§ 594.309 Property; property interest.

Currentness

The terms property and property interest include, but are not limited to, money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling agreements, services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent.

SOURCE: 68 FR 34197, June 6, 2003; 68 FR 53660, Sept. 11, 2003; 71 FR 29253, May 22, 2006; 72 FR 61518, Oct. 31, 2007; 73 FR 32656, June 10, 2008; 78 FR 38575, June 27, 2013, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 22 U.S.C. 287c; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub.L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub.L. 110–96, 121 Stat. 1011; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; E.O. 13268, 67 FR 44751, 3 CFR, 2002 Comp., p. 240; E.O. 13284, 68 FR 4075, 3 CFR, 2003 Comp., p. 161; E.O. 13372, 70 FR 8499, 3 CFR, 2006 Comp., p. 159.

Current through October 10, 2013; 78 FR 61990

End of Document                                     © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 594.502 Effect of license or authorization., 31 C.F.R. § 594.502

Code of Federal Regulations
  Title 31. Money and Finance: Treasury
   Subtitle B. Regulations Relating to Money and Finance
    Chapter V. Office of Foreign Assets Control, Department of the Treasury
     Part 594. Global Terrorism Sanctions Regulations (Refs & Annos)
      Subpart E. Licenses, Authorizations and Statements of Licensing Policy

31 C.F.R. § 594.502

§ 594.502 Effect of license or authorization.

Currentness

(a) No license or other authorization contained in this part, or otherwise issued by or under the direction of the Director of the Office of Foreign Assets Control, authorizes or validates any transaction effected prior to the issuance of the license, unless specifically provided in such license or authorization.

(b) No regulation, ruling, instruction, or license authorizes any transaction prohibited under this part unless the regulation, ruling, instruction or license is issued by the Office of Foreign Assets Control and specifically refers to this part. No regulation, ruling, instruction, or license referring to this part shall be deemed to authorize any transaction prohibited by any provision of this chapter unless the regulation, ruling, instruction, or license specifically refers to such provision.

(c) Any regulation, ruling, instruction, or license authorizing any transaction otherwise prohibited under this part has the effect of removing a prohibition contained in this part from the transaction, but only to the extent specifically stated by its terms. Unless the regulation, ruling, instruction, or license otherwise specifies, such an authorization does not create any right, duty, obligation, claim, or interest in, or with respect to, any property which would not otherwise exist under ordinary principles of law.

SOURCE: 68 FR 34197, June 6, 2003; 68 FR 53660, Sept. 11, 2003; 71 FR 29253, May 22, 2006; 72 FR 61518, Oct. 31, 2007; 73 FR 32656, June 10, 2008; 78 FR 38575, June 27, 2013, unless otherwise noted.

AUTHORITY: 3 U.S.C. 301; 22 U.S.C. 287c; 31 U.S.C. 321(b); 50 U.S.C. 1601–1651, 1701–1706; Pub.L. 101–410, 104 Stat. 890 (28 U.S.C. 2461 note); Pub.L. 110–96, 121 Stat. 1011; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; E.O. 13268, 67 FR 44751, 3 CFR, 2002 Comp., p. 240; E.O. 13284, 68 FR 4075, 3 CFR, 2003 Comp., p. 161; E.O. 13372, 70 FR 8499, 3 CFR, 2006 Comp., p. 159.

Current through October 18, 2013; 78 FR 62332

**End of Document**            © 2013 Thomson Reuters. No claim to original U.S. Government Works.

§ 16-526. Judgment against garnishee., DC CODE § 16-526

West's District of Columbia Code Annotated 2001 Edition
  Division II. Judiciary and Judicial Procedure
    Title 16. Particular Actions, Proceedings and Matters. (Refs & Annos)
      Chapter 5. Attachment and Garnishment. (Refs & Annos)
        Subchapter I. Attachment and Garnishment Generally. (Refs & Annos)

DC ST § 16-526
Formerly cited as DC ST 1981 §  16-526

§ 16-526. Judgment against garnishee.

Currentness

(a) When a garnishee has admitted credits in his hands, in answer to interrogatories served upon him, or the credits have been found upon an issue made as provided by this chapter, judgment shall be entered against him for the amount of credits admitted or found, not exceeding the plaintiff's claim, less a reasonable attorney's fee to be fixed by the court, and costs, and execution may be had thereon. When the credits are not immediately due and payable, execution shall be stayed until they become due.

(b) When the garnishee has failed to answer the interrogatories served on him, or to appear and show cause why a judgment of condemnation should not be entered, judgment shall be entered against him for the whole amount of the plaintiff's claim, and costs, and execution may be had thereon.

**Credits**
(Dec. 23, 1963, 77 Stat. 550, Pub. L. 88-241, § 1.)

Copyright © 2012 By the District of Columbia. Content previously published in the District of Columbia Official Code, 2001 Edition is used with permission. Copyright © 2013 Thomson Reuters.
DC CODE § 16-526
Current through July 29, 2013

**End of Document**                          © 2013 Thomson Reuters. No claim to original U.S. Government Works

United States Code Annotated
  Title 50. War and National Defense (Refs & Annos)
    Chapter 35. International Emergency Economic Powers (Refs & Annos)

50 U.S.C.A. § 1701

§ 1701. Unusual and extraordinary threat; declaration of national emergency; exercise of Presidential
authorities

Currentness

**(a)** Any authority granted to the President by section 1702 of this title may be exercised to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat.

**(b)** The authorities granted to the President by section 1702 of this title may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose. Any exercise of such authorities to deal with any new threat shall be based on a new declaration of national emergency which must be with respect to such threat.

**CREDIT(S)**
(Pub.L. 95-223, Title II, § 202, Dec. 28, 1977, 91 Stat. 1626.)

**EXECUTIVE ORDERS**

EXECUTIVE DOCUMENTS

Provisions relating to the exercise of Presidential authorities to declare national emergencies for unusual and extraordinary threats with respect to the actions of certain persons and countries are contained in the following:

. . . .
[references to other nations to which Executive Orders apply have been omitted]

Iran

Ex. Ord. No. 12170, Nov. 14, 1979, 44 F.R. 65729.

Continuations of national emergency declared by Ex. Ord. No. 12170 were contained in the following:

Notice of President of the United States, dated Nov. 7, 2011, 76 F.R. 70035.

Notice of President of the United States, dated Nov. 10, 2010, 75 F.R. 69569.

Notice of President of the United States, dated Nov. 12, 2009, 74 F.R. 58841.

Notice of President of the United States, dated Nov. 10, 2008, 73 F.R. 67357.

Notice of President of the United States, dated Nov. 8, 2007, 72 F.R. 63965.

§ 1701. Unusual and extraordinary threat; declaration of national..., 50 USCA § 1701

Notice of President of the United States, dated Nov. 9, 2006, 71 F.R. 66227.

Notice of President of the United States, dated Nov. 9, 2005, 70 F.R. 69039.

Notice of President of the United States, dated Nov. 9, 2004, 69 F.R. 65513.

Notice of President of the United States, dated Nov. 12, 2003, 68 F.R. 64489.

Notice of President of the United States, dated Nov. 12, 2002, 67 F.R. 68929.

Notice of President of the United States, dated Nov. 9, 2001, 66 F.R. 56966.

Notice of President of the United States, dated Nov. 9, 2000, 65 F.R. 68061.

Notice of President of the United States, dated Nov. 5, 1999, 64 F.R. 61471.

Notice of President of the United States, dated Nov. 9, 1998, 63 F.R. 63125.

Notice of President of the United States, dated Sept. 30, 1997, 62 F.R. 51591.

Notice of President of the United States, dated Oct. 29, 1996, 61 F.R. 56107.

Notice of President of the United States, dated Oct. 31, 1995, 60 F.R. 55651.

Notice of President of the United States, dated Oct. 31, 1994, 59 F.R. 54785.

Notice of President of the United States, dated Nov. 1, 1993, 58 F.R. 58639.

Notice of President of the United States, dated Oct. 25, 1992, 57 F.R. 48719.

Notice of President of the United States, dated Nov. 12, 1991, 56 F.R. 57791.

Notice of President of the United States, dated Nov. 9, 1990, 55 F.R. 47453.

Notice of President of the United States, dated Oct. 30, 1989, 54 F.R. 46043.

Notice of President of the United States, dated Nov. 8, 1988, 53 F.R. 45750.

Notice of President of the United States, dated Nov. 10, 1987, 52 F.R. 43549.

Notice of President of the United States, dated Nov. 10, 1986, 51 F.R. 41067.

Notice of President of the United States, dated Nov. 1, 1985, 50 F.R. 45901.

Notice of President of the United States, dated Nov. 7, 1984, 49 F.R. 44741.

Notice of President of the United States, dated Nov. 8, 1982, 47 F.R. 50841.

Ex. Ord. No. 12205, Apr. 7, 1980, 45 F.R. 24099, as amended by Ex. Ord. No. 12211, Apr. 17, 1980, 45 F.R. 26685, of which provisions related to prohibitions contained therein were revoked by Ex. Ord. No. 12282, Jan. 19, 1981, 46 F.R. 7925.

Ex. Ord. No. 12211, Apr. 17, 1980, 45 F.R. 26685, of which provisions related to prohibitions contained therein were revoked by Ex. Ord. No. 12282, Jan. 19, 1981, 46 F.R. 7925.

§ 1701. Unusual and extraordinary threat; declaration of national..., 50 USCA § 1701

Ex. Ord. No. 12276, Jan. 19, 1981, 46 F.R. 7913.

Ex. Ord. No. 12277, Jan. 19, 1981, 46 F.R. 7915.

Ex. Ord. No. 12278, Jan. 19, 1981, 46 F.R. 7917.

Ex. Ord. No. 12279, Jan. 19, 1981, 46 F.R. 7919.

Ex. Ord. No. 12280, Jan. 19, 1981, 46 F.R. 7921.

Ex. Ord. No. 12281, Jan. 19, 1981, 46 F.R. 7923.

Ex. Ord. No. 12282, Jan. 19, 1981, 46 F.R. 7925.

Ex. Ord. No. 12283, Jan. 19, 1981, 46 F.R. 7927.

Ex. Ord. No. 12284, Jan. 19, 1981, 46 F.R. 7929.

Ex. Ord. No. 12285, Jan. 19, 1981, 46 F.R. 7931, as amended by Ex. Ord. No. 12307, June 4, 1981, 46 F.R. 30483; Ex. Ord. No. 12317, Aug. 14, 1981, 46 F.R. 42241, revoked by Ex. Ord. No. 12379, Sec. 21, Aug. 17, 1982, 47 F.R. 36100, set out as a note under section 14 of the Federal Advisory Committee Act in the Appendix to Title 5, Government Organization and Employees.

Ex. Ord. No. 12294, Feb. 24, 1981, 46 F.R. 14111.

Ex. Ord. No. 12613, Oct. 29, 1987, 52 F.R. 41940, revoked by Ex. Ord. No. 13059, Sec. 7, Aug. 19, 1997, 62 F.R. 44533.

Ex. Ord. No. 12957, Mar. 15, 1995, 60 F.R. 14615, sections 1 and 2 of which were revoked by Ex. Ord. No. 12959, Sec. 5, May 6, 1995, 60 F.R. 24758, to the extent inconsistent with Ex. Ord. No. 12959.

Continuations of national emergency declared by Ex. Ord. No. 12957 were contained in the following:

Notice of President of the United States, dated Mar. 12, 2013, 78 F.R. 16397.

Notice of President of the United States, dated Mar. 13, 2012, 77 F.R. 15229.

Notice of President of the United States, dated Mar. 8, 2011, 76 F.R. 13283.

Notice of President of the United States, dated Mar. 10, 2010, 75 F.R. 12117.

Notice of President of the United States, dated Mar. 11, 2009, 74 F.R. 10999.

Notice of President of the United States, dated Mar. 11, 2008, 73 F.R. 13727.

Notice of President of the United States, dated Mar. 8, 2007, 72 F.R. 10883.

Notice of President of the United States, dated Mar. 13, 2006, 71 F.R. 13241.

Notice of President of the United States, dated Mar. 10, 2005, 70 F.R. 12581.

Notice of President of the United States, dated Mar. 10, 2004, 69 F.R. 12051.

Notice of President of the United States, dated Mar. 12, 2003, 68 F.R. 12563.

§ 1701. Unusual and extraordinary threat; declaration of national..., 50 USCA § 1701

Notice of President of the United States, dated Mar. 13, 2002, 67 F.R. 11553.

Notice of President of the United States, dated Mar. 13, 2001, 66 F.R. 15013.

Notice of President of the United States, dated Mar. 13, 2000, 65 F.R. 13863.

Notice of President of the United States, dated Mar. 10, 1999, 64 F.R. 12239.

Notice of President of the United States, dated Mar. 4, 1998, 63 F.R. 11099.

Notice of President of the United States, dated Mar. 5, 1997, 62 F.R. 10409.

Notice of President of the United States, dated Mar. 8, 1996, 61 F.R. 9897.

Ex. Ord. No. 12959, May 6, 1995, 60 F.R. 24757, as amended by Ex. Ord. No. 13059, Sec. 7, Aug. 19, 1997, 62 F.R. 44533.

Ex. Ord. No. 13059, Aug. 19, 1997, 62 F.R. 44531.

Ex. Ord. No. 13553, Sept. 28, 2010, 75 F.R. 60567.

Ex. Ord. No. 13574, May 23, 2011, 76 F.R. 30505.

Ex. Ord. No. 13590, Nov. 20, 2011, 76 F.R. 72609.

Ex. Ord. No. 13599, Feb. 5, 2012, 77 F.R. 6659.

Ex. Ord. No. 13606, Apr. 22, 2012, 77 F.R. 24751.

Ex. Ord. No. 13608, May 1, 2012, 77 F.R. 26409.

Ex. Ord. No. 13622, July 30, 2012, 77 F.R. 45897, amended by Ex. Ord. No. 13628, § 15, Oct. 9, 2012, 77 F.R. 62144; Ex. Ord. No. 13645, § 16, June 3, 2013, 78 F.R. 33945..

Ex. Ord. No. 13628, Oct. 9, 2012, 77 F.R. 62139.

Ex. Ord. No. 13645, June 3, 2013, 78 F.R. 33945.

50 U.S.C.A. § 1701, 50 USCA § 1701
Current through P.L. 113-36 approved 9-18-13

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

TERRORISM RISK INSURANCE ACT OF 2002, PL 107–297, November 26, 2002,...

PL 107–297, November 26, 2002, 116 Stat 2322

UNITED STATES PUBLIC LAWS
107th Congress - Second Session
Convening January, 2002

Additions and Deletions are not identified in this database.
Vetoed provisions within tabular material are not displayed

PL 107–297 (HR 3210)
November 26, 2002
TERRORISM RISK INSURANCE ACT OF 2002

An Act To ensure the continued financial capacity of insurers to provide coverage for risks from terrorism.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

<< 15 USCA § 6701 NOTE >>

(a) SHORT TITLE.—This Act may be cited as the "Terrorism Risk Insurance Act of 2002".
(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—TERRORISM INSURANCE PROGRAM

Sec. 101. Congressional findings and purpose.

Sec. 102. Definitions.

Sec. 103. Terrorism Insurance Program.

Sec. 104. General authority and administration of claims.

Sec. 105. Preemption and nullification of pre-existing terrorism exclusions.

Sec. 106. Preservation provisions.

Sec. 107. Litigation management.

Sec. 108. Termination of Program.

TITLE II—TREATMENT OF TERRORIST ASSETS

Sec. 201. Satisfaction of judgments from blocked assets of terrorists, terrorist organizations, and State sponsors of terrorism.

TITLE III—FEDERAL RESERVE BOARD PROVISIONS

Sec. 301. Certain authority of the Board of Governors of the Federal Reserve System.

......................

## TITLE II—TREATMENT OF TERRORIST ASSETS

SEC. 201. SATISFACTION OF JUDGMENTS FROM BLOCKED ASSETS OF TERRORISTS, TERRORIST ORGANIZATIONS, AND STATE SPONSORS OF TERRORISM.

<< 28 USCA § 1610 NOTE >>

(a) IN GENERAL.—Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

<< 15 USCA § 1610 NOTE >>

..................

<< 15 USCA § 1610 NOTE >>

(d) DEFINITIONS.—In this section, the following definitions shall apply:

(1) ACT OF TERRORISM.—The term "act of terrorism" means—

(A) any act or event certified under section 102(1); or

(B) to the extent not covered by subparagraph (A), any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))).

(2) BLOCKED ASSET.—The term "blocked asset" means—

(A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702); and

(B) does not include property that—

(i) is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by statute other than the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the United Nations Participation Act of 1945 (22 U.S.C. 287 et seq.); or

(ii) in the case of property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, or that enjoys equivalent privileges and immunities under the law of the United States, is being used exclusively for diplomatic or consular purposes.

(3) CERTAIN PROPERTY.—The term "property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations" and the term "asset subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations" mean any property or asset, respectively, the attachment in aid of execution or execution of which would result in a violation of an obligation of the United States under the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, as the case may be.

(4) TERRORIST PARTY.—The term "terrorist party" means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371).

**Global Terrorism Sanctions Regulations, 68 FR 34196-01**

68 FR 34196-01
RULES and REGULATIONS
DEPARTMENT OF THE TREASURY
Office of Foreign Assets Control
31 CFR Part 594

Global Terrorism Sanctions Regulations

Friday, June 6, 2003

**\*34196** AGENCY: Office of Foreign Assets Control, Treasury.

ACTION: Interim final rule.

SUMMARY: The Office of Foreign Assets Control of the U.S. Department of the Treasury is adding new part 594 to chapter V of 31 CFR to carry out the purposes of Executive Order 13224 of September 23, 2001, "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism."
DATES: Effective Date: June 6, 2003.
Comments: Written comments must be received no later than August 5, 2003.

ADDRESSES: Comments may be sent either via regular mail to the attention of Chief, Policy Planning and Program Management Division, rm. 2176, Office of Foreign Assets Control, Department of the Treasury, 1500 Pennsylvania Ave., NW., Annex—2d Floor, Washington, DC 20220, or via OFAC's Web site (http:// www.treas.gov/ofac).

FOR FURTHER INFORMATION CONTACT: Chief of Licensing, tel.: 202/622-2480, or Chief Counsel, tel.: 202/622-2410, Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220.

SUPPLEMENTARY INFORMATION:

**Electronic Availability**
This document is available as an electronic file on The Federal Bulletin Board the day of publication in the Federal Register. By modem, dial 202/512-1387 and type "/GO FAC," or call 202/512-1530 for disk or paper copies. This file is available for downloading without charge in ASCII and Adobe Acrobat7 readable (\*.PDF) formats. For Internet access, the address for use with the World Wide Web (home page), Telnet, or FTP protocol is: fedbbs.access.gpo.gov. This document and additional information concerning the programs of the Office of Foreign Assets Control are available for downloading from the Office's Internet home page: http://www.treas.gov/ofac, or in fax form through the Office's 24-hour fax-on-demand service: call 202/622-0077 using a fax machine, fax modem, or (within the United States) a touch-tone telephone.

**Background**
On September 23, 2001, the President, invoking the authority, inter alia, of the International Emergency Economic Powers Act (50 U.S.C. 1701-1706) ("IEEPA") and the United Nations Participation Act (22 U.S.C. 287c), issued Executive Order 13224 (66 FR 49079, September 25, 2001), effective at 12:01 a.m. eastern daylight time on September 24, 2001. In the order, the President found that "grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the terrorist attacks in New York, Pennsylvania, and the Pentagon committed on September 11, 2001 \* \* \* and the continuing and immediate threat of further attacks on United States nationals or the United States" constituted an unusual and extraordinary threat to the national security, foreign policy and economy of the United States, and declared a national emergency with respect to that threat. The order was amended by Executive Order 13268 (67 FR 44751, July 3, 2001) and Executive Order 13284 (68 FR 4075, January 28, 2003).

**Global Terrorism Sanctions Regulations, 68 FR 34196-01**

These regulations are promulgated to implement Executive Order 13224. They are in addition to and do not take the place of other parts of 31 CFR chapter V relating to terrorism, including, but not limited to, the Terrorism Sanctions Regulations (part 595), implementing Executive Order 12947, "Prohibiting Transactions With Terrorists Who Threaten To Disrupt the Middle East Peace Process" (60 FR 5079, January 25, 1995); the Terrorism List Government Sanctions Regulations (part 596), implementing section 321 of the Antiterrorism and Effective Death Penalty Act of 1996 (18 U.S.C. 2332d); and the Foreign Terrorist Organizations Sanctions Regulations (part 597), implementing sections 302 and 303 of the Antiterrorism and Effective Death Penalty Act of 1996 (8 U.S.C. 1189, 18 U.S.C. 2339B). (Detailed information regarding each of those other parts is available on OFAC's Web site (http://www.treas.gov/ofac).) Certain persons designated pursuant to the regulations now being promulgated may also be designated pursuant to those other parts, and transactions related to those persons are subject to the requirements of those parts and other sanctions under U.S. law. These new regulations also do not in any way modify the criminal prohibition, set forth at 18 U.S.C. 2339B, against providing material support or resources to foreign terrorist organizations designated pursuant to section 219 of the Immigration and Nationality Act, as amended.

Specifically, these regulations are promulgated in furtherance of the sanctions set forth in Executive Order 13224. Section 1 of the order blocks, with certain exceptions, all property and interests in property of foreign persons listed in an Annex to the order and persons designated by the Secretary of State or the Secretary of the Treasury pursuant to criteria set forth in the order. Section 2 of the order prohibits any transaction or dealing by a United States person or within the United States in property or interests in property blocked pursuant to the order, including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of a person designated in or pursuant to the order. Section 2 of the order also prohibits any transaction by a United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the order, as well as any conspiracy formed to violate such prohibitions. Section 7 of the order authorizes the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes of the order. Acting under authority delegated by the Secretary of the Treasury, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") is promulgating these Global Terrorism Sanctions Regulations, 31 CFR part 594 (the "Regulations").

Subpart B of the Regulations sets forth the prohibitions contained in sections 1 and 2 of the order. See §§ 594.201, 594.204, and 594.205. Persons identified in the Annex to the order or designated by or under the authority of the Secretary of State or the Secretary of the Treasury pursuant to the order are referred to throughout the Regulations as "persons whose property or interests in property are blocked pursuant to § 594.201(a)." Their names are or will be published on OFAC's website, announced in the Federal Register and incorporated on an ongoing basis into appendix A to 31 CFR chapter V, which lists persons subject to various sanctions programs administered by OFAC.

Sections 594.202 and 594.203 of subpart B detail the effect of transfers of **\*34197** blocked property in violation of the Regulations and the requirement to hold blocked property in interest-bearing blocked accounts. Section 594.206 of subpart B provides that all expenses incident to the maintenance of blocked physical property shall be the responsibility of the owners and operators of such property, and that such expenses shall not be met from blocked funds. The section further provides that blocked property may, in the discretion of the Director of OFAC, be sold or liquidated and the net proceeds placed in a blocked interest-bearing account in the name of the owner of the property.

Subpart C of the Regulations defines key terms used throughout the Regulations, and subpart D sets forth interpretive sections regarding the general prohibitions contained in subpart B. Certain transactions otherwise prohibited under the Regulations but found to be consistent with U.S. policy are authorized by one of the general licenses contained in subpart E or may be authorized by a specific license issued pursuant to the procedures described in subpart D of part 501 of 31 CFR chapter V.

Subpart F of the Regulations refers to subpart C of part 501 for applicable recordkeeping and reporting requirements. Subpart G of the Regulations describes the civil and criminal penalties applicable to violations of the Regulations, as well as the procedures governing the potential imposition of a civil monetary penalty.

Subpart H of the Regulations refers to subpart D of part 501 for applicable provisions relating to administrative procedures. Subpart I of the Regulations sets forth a Paperwork Reduction Act notice.

Global Terrorism Sanctions Regulations, 68 FR 34196-01

**Request for Comments; Procedural Requirements**
Because the Regulations involve a foreign affairs function, the provisions of Executive Order 12866 and the Administrative Procedure Act (5 U.S.C. 553) (the "APA") requiring notice of proposed rulemaking, opportunity for public participation, and delay in effective date are inapplicable. However, because of the importance of the issues addressed in these regulations, this rule is being issued in interim form and comments will be considered in the development of final regulations. Accordingly, the Department encourages interested persons who wish to comment to do so at the earliest possible time to permit the fullest consideration of their views. Comments may address the impact of the Regulations on the submitter's activities, whether of a commercial, non-commercial or humanitarian nature, as well as changes that would improve the clarity and organization of the Regulations.

The period for submission of comments will close August 5, 2003. The Department will consider all comments received before the close of the comment period in developing final regulations. Comments received after the end of the comment period will be considered if possible, but their consideration cannot be assured. The Department will not accept public comments accompanied by a request that a part or all of the submission be treated confidentially because of its business proprietary nature or for any other reason. The Department will return such submission to the originator without considering them in the development of final regulations. In the interest of accuracy and completeness, the Department requires comments in written form.

All public comments on these Regulations will be a matter of public record. Copies of the public record concerning these Regulations will be made available not sooner than September 4, 2003, and will be obtainable from OFAC's Web site (http://www.treas.gov/ofac). If that service is unavailable, written requests for copies may be sent to: Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Ave., NW., Washington, DC 20220, Attn: Chief, Records Division.

Because no notice of proposed rulemaking is required for this rule, the Regulatory Flexibility Act (5 U.S.C. 601-612) does not apply.

**Paperwork Reduction Act**
The collections of information related to the Regulations are contained in 31 CFR part 501 (the "Reporting and Procedures Regulations"). Pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3507), those collections of information have been previously approved by the Office of Management and Budget under control number 1505-0164. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid control number.

**List of Subjects in 31 CFR Part 594**
Administrative practice and procedure, Banks, Banking, Blocking of assets, Penalties, Reporting and recordkeeping requirements, Specially designated global terrorist, Terrorism, Transfer of assets.

1. For the reasons set forth in the preamble, part 594 is added to 31 CFR chapter V to read as follows:

**PART 594—GLOBAL TERRORISM SANCTIONS REGULATIONS**

**Subpart A—Relation of This Part to Other Laws and Regulations**

Sec.

594.101 Relation of this part to other laws and regulations.

**Subpart B—Prohibitions**

594.201 Prohibited transactions involving blocked property.

594.202 Effect of transfers violating the provisions of this part.

**Global Terrorism Sanctions Regulations, 68 FR 34196-01**

594.203 Holding of funds in interest-bearing accounts; investment and reinvestment.

594.204 Prohibited transaction or dealing in property; contributions of funds, goods, or services.

594.205 Evasions; attempts; conspiracies.

594.206 Expenses of maintaining blocked property; liquidation of blocked property.

**Subpart C—General Definitions**

594.301 Blocked account; blocked property.

594.302 Effective date.

594.303 Entity.

594.304 Foreign person.

594.305 Information or informational materials.

594.306 Interest.

594.307 Licenses; general and specific.

594.308 Person.

594.309 Property; property interest.

594.310 Specially designated global terrorist; SDGT.

594.311 Terrorism.

594.312 Transfer.

594.313 United States.

594.314 U.S. financial institution.

594.315 United States person; U.S. person.

**Subpart D—Interpretations**

594.401 Reference to amended sections.

594.402 Effect of amendment.

594.403 Setoffs prohibited.

594.404 Termination and acquisition of an interest in blocked property.

594.405 Transactions incidental to a licensed transaction.

594.406 Provision of services.

594.407 Offshore transactions.

594.408 Payments from blocked accounts to satisfy obligations prohibited.

Global Terrorism Sanctions Regulations, 68 FR 34196-01

594.409 Charitable contributions.

594.410 Credit extended and cards issued by U.S. financial institutions.

**Subpart E—Licenses, Authorizations and Statements of Licensing Policy**

594.501 General and specific licensing procedures.

594.502 Effect of license or authorization.

594.503 Exclusion from licenses and other authorizations.

594.504 Payments and transfers to blocked accounts in U.S. financial institutions.

594.505 Entries in certain accounts for normal service charges authorized.
594.506 Provision of certain legal services authorized. *34198

594.507 Authorization of emergency medical services.

594.508 Transactions related to telecommunications authorized.

594.509 Transactions related to mail authorized.

**Subpart F—Reports**

594.601 Records and reports.

**Subpart G—Penalties**

594.701 Penalties.

594.702 Prepenalty notice.

594.703 Response to prepenalty notice; informal settlement.

594.704 Penalty imposition or withdrawal.

594.705 Administrative collection; referral to United States Department of Justice.

**Subpart H—Procedures**

594.801 Procedures.

594.802 Delegation by the Secretary of the Treasury.

**Subpart I—Paperwork Reduction Act**

594.901 Paperwork Reduction Act notice.
Authority: 3 U.S.C. 301; 22 U.S.C. 287c; 31 U.S.C. 321(b); 50 U.S.C. 1601-1651, 1701-1706; E.O. 13224, 66 FR 49079, September 25, 2001; E.O. 13268, 67 FR 44751, July 3, 2002, 3 CFR, 2002 Comp., p. 240; E.O. 13284, 64 FR 4075, January 28, 2003.

**Subpart A—Relation of This Part to Other Laws and Regulations**
31 CFR § 594.101

**§ 594.101 Relation of this part to other laws and regulations.**
This part is separate from, and independent of, the other parts of this chapter, with the exception of part 501 of this chapter,

**Global Terrorism Sanctions Regulations, 68 FR 34196-01**

the recordkeeping and reporting requirements and license application and other procedures of which apply to this part. Actions taken pursuant to part 501 of this chapter with respect to the prohibitions contained in this part are considered actions taken pursuant to this part. Differing foreign policy and national security circumstances may result in differing interpretations of similar language among the parts of this chapter. No license or authorization contained in or issued pursuant to those other parts authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to any other provision of law or regulation authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to this part relieves the involved parties from complying with any other applicable laws or regulations.

**Subpart B—Prohibitions**
31 CFR § 594.201

**§ 594.201 Prohibited transactions involving blocked property.**
(a) Except as authorized by statutes, regulations, orders, directives, rulings, instructions, licenses or otherwise, and notwithstanding any contracts entered into or any license or permit granted prior to the effective date, property and interests in property of the following persons that are in the United States, that hereafter come within the United States, or that hereafter come within the possession or control of U.S. persons, including their overseas branches, are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in:

(1) Foreign persons listed in the Annex to Executive Order 13224 of September 23, 2001, as may be amended;

(2) Foreign persons determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Secretary of Homeland Security and the Attorney General, to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States;

(3) Persons determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, to be owned or controlled by, or to act for or on behalf of, any person whose property or interests in property are blocked pursuant to paragraphs (a)(1), (a)(2), (a)(3), or (a)(4)(i) of this section; or

(4) Except as provided in section 5 of Executive Order 13224, any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General:

(i) To assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of:

(A) Acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States, or

(B) Any person whose property or interests in property are blocked pursuant to paragraph (a) of this section; or

(ii) To be otherwise associated with any person whose property or interests in property are blocked pursuant to paragraphs (a)(1), (a)(2), (a)(3), or (a)(4)(i) of this section.

Note 1 to paragraph (a). Section 5 of Executive Order 13224, as amended, provides that, with respect to those persons designated pursuant to paragraph (a)(4) of this section, the Secretary of the Treasury, in the exercise of his discretion and in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, may take such other actions than the complete blocking of property or interests in property as the President is authorized to take under the International Emergency Economic Powers Act and the United Nations Participation Act if the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General, deems such other actions to be consistent with the national interests of the United States, considering such factors as he deems appropriate.

Note 2 to paragraph (a). The names of persons whose property or interests in property are blocked pursuant to § 594.201(a) are published on OFAC's website, announced in the Federal Register and incorporated on an ongoing basis with the identifier [SDGT] in appendix A to 31 CFR chapter V.

Global Terrorism Sanctions Regulations, 68 FR 34196-01

Note 3 to paragraph (a). Section 501.807 of this chapter V sets forth the procedures to be followed by persons seeking administrative reconsideration of their designation pursuant to § 594.201(a)(2), (a)(3), or (a)(4) or who wish to assert that the circumstances resulting in designation no longer apply. Similarly, when a transaction results in the blocking of funds at a financial institution pursuant to this section and a party to the transaction believes the funds to have been blocked due to mistaken identity, that party may seek to have such funds unblocked pursuant to the administrative procedures set forth in § 501.806 of this chapter.

(b) Unless otherwise authorized by this part or by a specific license expressly referring to this section, any dealing in any security (or evidence thereof) held within the possession or control of a U.S. person and either registered or inscribed in the name of or known to be held for the benefit of any person whose property or interests in property are blocked pursuant to § 594.201(a) is prohibited. This prohibition includes but is not limited to the transfer (including the transfer on the books of any issuer or agent thereof), disposition, transportation, importation, exportation, or withdrawal of any such security or the endorsement or guaranty of signatures on any such security. This prohibition applies irrespective of the fact that at any time (whether prior to, on, or subsequent to the effective date) the registered or inscribed owner of any such security may have or might appear to have assigned, transferred, or otherwise disposed of the security.

Note 1 to § 594.201. Section 106 of the USA PATRIOT Act of 2001 (Pub. L. 107-56, Oct. 26, 2001) amended section 203 of the International Emergency Economic Powers Act (50 U.S.C. 1702) to authorize explicitly the blocking of property and interests in property of a person or entity during the pendency of an investigation. The name of any person or entity whose property or interests in property are blocked pursuant to this authority appears on the Office of *34199 Foreign Assets Control's (OFAC) blocked persons list with the descriptor "[BPI-PA]." The scope of the property or interests in property blocked during the pendency of an investigation may be more limited than the scope of the blocking set forth in § 594.201(a). Inquiries regarding the scope of any such blocking should be directed to OFAC's Compliance Division at 202/622-2490.

Note 2 to § 594.201. The prohibitions set forth in this part are separate from and in addition to other parts of 31 CFR chapter V, including but not limited to the Terrorism Sanctions Regulations (part 595), the Terrorism List Government Sanctions Regulations (part 596), and the Foreign Terrorist Organizations Sanctions Regulations (part 597). The prohibitions set forth in this part also are separate and apart from the criminal prohibition, set forth at 18 U.S.C. 2339B, against providing material support or resources to foreign terrorist organizations designated pursuant to section 219 of the Immigration and Nationality Act, as amended.
31 CFR § 594.202

### § 594.202 Effect of transfers violating the provisions of this part.
(a) Any transfer after the effective date that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 594.201(a), is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interests.

(b) No transfer before the effective date shall be the basis for the assertion or recognition of any right, remedy, power, or privilege with respect to, or any interest in, any property or interest in property blocked pursuant to § 594.201(a), unless the person with whom such property is held or maintained, prior to that date, had written notice of the transfer or by any written evidence had recognized such transfer.

(c) Unless otherwise provided, an appropriate license or other authorization issued by or pursuant to the direction or authorization of the Director of the Office of Foreign Assets Control before, during, or after a transfer shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of the International Emergency Economic Powers Act, this part, and any regulation, order, directive, ruling, instruction, or license issued pursuant to this part.

(d) Transfers of property that otherwise would be null and void or unenforceable by virtue of the provisions of this section shall not be deemed to be null and void or unenforceable as to any person with whom such property was held or maintained (and as to such person only) in cases in which such person is able to establish to the satisfaction of the Director of the Office of Foreign Assets Control each of the following:

(1) Such transfer did not represent a willful violation of the provisions of this part by the person with whom such property

Global Terrorism Sanctions Regulations, 68 FR 34196-01

was held or maintained;

(2) The person with whom such property was held or maintained did not have reasonable cause to know or suspect, in view of all the facts and circumstances known or available to such person, that such transfer required a license or authorization issued pursuant to this part and was not so licensed or authorized, or, if a license or authorization did purport to cover the transfer, that such license or authorization had been obtained by misrepresentation of a third party or withholding of material facts or was otherwise fraudulently obtained; and

(3) The person with whom such property was held or maintained filed with the Office of Foreign Assets Control a report setting forth in full the circumstances relating to such transfer promptly upon discovery that:

(i) Such transfer was in violation of the provisions of this part or any regulation, ruling, instruction, license, or other direction or authorization issued pursuant to this part;

(ii) Such transfer was not licensed or authorized by the Director of the Office of Foreign Assets Control; or

(iii) If a license did purport to cover the transfer, such license had been obtained by misrepresentation of a third party or withholding of material facts or was otherwise fraudulently obtained.

Note to paragraph (d). The filing of a report in accordance with the provisions of paragraph (d)(3) of this section shall not be deemed evidence that the terms of paragraphs (d)(1) and (d)(2) of this section have been satisfied.

(e) Except to the extent otherwise provided by law or unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which on or since the effective date there existed an interest of a person whose property or interests in property are blocked pursuant to § 594.201(a).
31 CFR § 594.203

### § 594.203 Holding of funds in interest-bearing accounts; investment and reinvestment.
(a) Except as provided in paragraph (c) or (d) of this section, or as otherwise directed by the Office of Foreign Assets Control, any U.S. person holding funds, such as currency, bank deposits, or liquidated financial obligations, subject to § 594.201(a) shall hold or place such funds in a blocked interest-bearing account located in the United States.

(b)(1) For purposes of this section, the term blocked interest-bearing account means a blocked account:

(i) In a federally-insured U.S. bank, thrift institution, or credit union, provided the funds are earning interest at rates that are commercially reasonable; or

(ii) With a broker or dealer registered with the Securities and Exchange Commission under the Securities Exchange Act of 1934, provided the funds are invested in a money market fund or in U.S. Treasury bills.

(2) For purposes of this section, a rate is commercially reasonable if it is the rate currently offered to other depositors on deposits or instruments of comparable size and maturity.

(3) Funds held or placed in a blocked account pursuant to this paragraph (b) may not be invested in instruments the maturity of which exceeds 180 days. If interest is credited to a separate blocked account or subaccount, the name of the account party on each account must be the same.

(c) Blocked funds held in instruments the maturity of which exceeds 180 days at the time the funds become subject to § 594.201(a) may continue to be held until maturity in the original instrument, provided any interest, earnings, or other proceeds derived therefrom are paid into a blocked interest-bearing account in accordance with paragraph (b) or (d) of this section.

(d) Blocked funds held in accounts or instruments outside the United States at the time the funds become subject to § 594.201(a) may continue to be held in the same type of accounts or instruments, provided the funds earn interest at rates that

Global Terrorism Sanctions Regulations, 68 FR 34196-01

are commercially reasonable.

(e) This section does not create an affirmative obligation for the holder of blocked tangible property, such as chattels or real estate, or of other blocked property, such as debt or equity securities, to sell or liquidate such property at the time the property becomes subject to § 594.201(a). However, the Office of Foreign Assets Control may issue licenses permitting or directing such sales or liquidation in appropriate cases. **\*34200**

(f) Funds subject to this section may not be held, invested, or reinvested in a manner that provides immediate financial or economic benefit or access to any person whose property or interests in property are blocked pursuant to § 594.201(a), nor may their holder cooperate in or facilitate the pledging or other attempted use as collateral of blocked funds or other assets.
  31 CFR § 594.204

### § 594.204 Prohibited transaction or dealing in property; contributions of funds, goods, or services.
Except as otherwise authorized, no U.S. person may engage in any transaction or dealing in property or interests in property of persons whose property or interests in property are blocked pursuant to § 594.201(a), including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of persons whose property or interests in property are blocked pursuant to § 594.201(a).
  31 CFR § 594.205

### § 594.205 Evasions; attempts; conspiracies.
(a) Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any transaction by any U.S. person or within the United States on or after the effective date that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in this part is prohibited.

(b) Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any conspiracy formed for the purpose of engaging in a transaction prohibited by this part is prohibited.
  31 CFR § 594.206

### § 594.206 Expenses of maintaining blocked property; liquidation of blocked property.
(a) Except as otherwise authorized, and notwithstanding the existence of any rights or obligations conferred or imposed by any international agreement or contract entered into or any license or permit granted before the effective date, all expenses incident to the maintenance of physical property blocked pursuant to § 594.201(a) shall be the responsibility of the owners or operators of such property, which expenses shall not be met from blocked funds.

(b) Property blocked pursuant to § 594.201(a) may, in the discretion of the Director, Office of Foreign Assets Control, be sold or liquidated and the net proceeds placed in a blocked interest-bearing account in the name of the owner of the property.

**Subpart C—General Definitions**
  31 CFR § 594.301

### § 594.301 Blocked account; blocked property.
The terms blocked account and blocked property shall mean any account or property subject to the prohibition in § 594.201 held in the name of a person whose property or interests in property are blocked pursuant to § 594.201(a), or in which such person has an interest, and with respect to which payments, transfers, exportations, withdrawals, or other dealings may not be made or effected except pursuant to an authorization or license from the Office of Foreign Assets Control expressly authorizing such action.
  31 CFR § 594.302

### § 594.302 Effective date.
The term effective date refers to the effective date of the applicable prohibitions and directives contained in this part as follows:

(a) With respect to a person whose property or interests in property are blocked pursuant to § 594.201(a)(1), 12:01 a.m.

eastern daylight time, September 24, 2001;

(b) With respect to a person whose property or interests in property are blocked pursuant to § 594.201(a)(2), (a)(3), or (a)(4), the earlier of the date on which is received actual or constructive notice of such person's designation by the Secretary of State or the Secretary of the Treasury.

31 CFR § 594.303

**§ 594.303 Entity.**
The term entity means a partnership, association, corporation, or other organization, group, or subgroup.

31 CFR § 594.304

**§ 594.304 Foreign person.**
The term foreign person means any citizen or national of a foreign state (including any such individual who is also a citizen or national of the United States), or any entity not organized solely under the laws of the United States or existing solely in the United States, but does not include a foreign state.

31 CFR § 594.305

**§ 594.305 Information or informational materials.**
(a) For purposes of this part, the term information or informational materials includes, but is not limited to, publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, compact disks, CD ROMs, artworks, and news wire feeds.

Note to paragraph (a). To be considered information or informational materials, artworks must be classified under chapter heading 9701, 9702, or 9703 of the Harmonized Tariff Schedule of the United States.

(b) The term information or informational materials, with respect to United States exports, does not include items:

(1) That were, as of April 30, 1994, or that thereafter became, controlled for export pursuant to section 5 of the Export Administration Act of 1979, 50 U.S.C. App. 2401-2420 (1979) (the "EAA"), or section 6 of the EAA to the extent that such controls promote the nonproliferation or antiterrorism policies of the United States; or

(2) With respect to which acts are prohibited by 18 U.S.C. chapter 37.

31 CFR § 594.306

**§ 594.306 Interest.**
Except as otherwise provided in this part, the term interest when used with respect to property (e.g., "an interest in property") means an interest of any nature whatsoever, direct or indirect.

31 CFR § 594.307

**§ 594.307 Licenses; general and specific.**
(a) Except as otherwise specified, the term license means any license or authorization contained in or issued pursuant to this part.

(b) The term general license means any license or authorization the terms of which are set forth in subpart E of this part.

(c) The term specific license means any license or authorization not set forth in subpart E of this part but issued pursuant to this part.

Note to § 594.307. See § 501.801 of this chapter on licensing procedures.

31 CFR § 594.308

**§ 594.308 Person.**
The term person means an individual or entity.

31 CFR § 594.309

Global Terrorism Sanctions Regulations, 68 FR 34196-01

### § 594.309 Property; property interest.

The terms property and property interest include, but are not limited to, money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable *34201 instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling agreements, services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent.

31 CFR § 594.310

### § 594.310 Specially designated global terrorist; SDGT.

The term specially designated global terrorist or SDGT means any foreign person or person listed in the Annex or designated pursuant to Executive Order 13224 of September 23, 2001.

31 CFR § 594.311

### § 594.311 Terrorism.

The term terrorism means an activity that:

(a) Involves a violent act or an act dangerous to human life, property, or infrastructure; and

(b) Appears to be intended:

(1) To intimidate or coerce a civilian population;

(2) To influence the policy of a government by intimidation or coercion; or

(3) To affect the conduct of a government by mass destruction, assassination, kidnapping, or hostage-taking.

31 CFR § 594.312

### § 594.312 Transfer.

The term transfer means any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property and, without limitation upon the foregoing, shall include the making, execution, or delivery of any assignment, power, conveyance, check, declaration, deed, deed of trust, power of attorney, power of appointment, bill of sale, mortgage, receipt, agreement, contract, certificate, gift, sale, affidavit, or statement; the making of any payment; the setting off of any obligation or credit; the appointment of any agent, trustee, or fiduciary; the creation or transfer of any lien; the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment; the acquisition of any interest of any nature whatsoever by reason of a judgment or decree of any foreign country; the fulfillment of any condition; the exercise of any power of appointment, power of attorney, or other power; or the acquisition, disposition, transportation, importation, exportation, or withdrawal of any security.

31 CFR § 594.313

### § 594.313 United States.

The term United States means the United States, its territories and possessions, and all areas under the jurisdiction or authority thereof.

31 CFR § 594.314

### § 594.314 U.S. financial institution.

The term U.S. financial institution means any U.S. person (including its foreign branches) that is engaged in the business of accepting deposits, making, granting, transferring, holding, or brokering loans or credits, or purchasing or selling foreign

exchange, securities, commodity futures or options, or procuring purchasers and sellers thereof, as principal or agent; including but not limited to, depository institutions, banks, savings banks, trust companies, securities brokers and dealers, commodity futures and options brokers and dealers, forward contract and foreign exchange merchants, securities and commodities exchanges, clearing corporations, investment companies, employee benefit plans, and U.S. holding companies, U.S. affiliates, or U.S. subsidiaries of any of the foregoing. This term includes those branches, offices and agencies of foreign financial institutions that are located in the United States, but not such institutions' foreign branches, offices, or agencies.

31 CFR § 594.315

### § 594.315 United States person; U.S. person.

The term United States person or U.S. person means any United States citizen, permanent resident alien, entity organized under the laws of the United States (including foreign branches), or any person in the United States.

### Subpart D—Interpretations

31 CFR § 594.401

### § 594.401 Reference to amended sections.

Except as otherwise specified, reference to any provision in or appendix to this part or chapter or to any regulation, ruling, order, instruction, direction, or license issued pursuant to this part refers to the same as currently amended.

31 CFR § 594.402

### § 594.402 Effect of amendment.

Unless otherwise specifically provided, any amendment, modification, or revocation of any provision in or appendix to this part or chapter or of any order, regulation, ruling, instruction, or license issued by or under the direction of the Director of the Office of Foreign Assets Control does not affect any act done or omitted, or any civil or criminal suit or proceeding commenced or pending prior to such amendment, modification, or revocation. All penalties, forfeitures, and liabilities under any such order, regulation, ruling, instruction, or license continue and may be enforced as if such amendment, modification, or revocation had not been made.

31 CFR § 594.403

### § 594.403 Setoffs prohibited.

A setoff against blocked property (including a blocked account), whether by a U.S. bank or other U.S. person, is a prohibited transfer under §§ 594.201 and 594.204 if effected after the effective date.

31 CFR § 594.404

### § 594.404 Termination and acquisition of an interest in blocked property.

(a) Whenever a transaction licensed or authorized by or pursuant to this part results in the transfer of property (including any property interest) away from a person, such property shall no longer be deemed to be property blocked pursuant to § 594.201(a), unless there exists in the property another interest that is blocked pursuant to § 594.201(a) or any other part of this chapter, the transfer of which has not been effected pursuant to license or other authorization.

(b) Unless otherwise specifically provided in a license or authorization issued pursuant to this part, if property (including any property interest) is transferred or attempted to be transferred to a person whose property or interests in property are blocked pursuant to § 594.201(a), such property shall be deemed to be property in which that person has an interest and therefore blocked.

31 CFR § 594.405

### § 594.405 Transactions incidental to a licensed transaction.

Any transaction ordinarily incident to a licensed transaction and necessary to give effect thereto is also authorized, except:

(a) An incidental transaction, not explicitly authorized within the terms of the license, by or with a person whose property or interests in property are blocked pursuant to § 594.201(a); or

(b) An incidental transaction, not explicitly authorized within the terms of the license, involving a debit to a blocked account or a transfer of blocked property.

31 CFR § 594.406

**§ 594.406 Provision of services.**
(a) Except as provided in § 594.207, the prohibitions on transactions or dealings involving blocked property contained in §§ 594.201 and 594.204  **\*34202** apply to services performed in the United States or by U.S. persons, wherever located, including by an overseas branch of an entity located in the United States:

(1) On behalf of or for the benefit of a person whose property or interests in property are blocked pursuant to § 594.201(a); or

(2) With respect to property interests subject to §§ 594.201 and 594.204.

(b) Example: U.S. persons may not, except as authorized by or pursuant to this part, provide legal, accounting, financial, brokering, freight forwarding, transportation, public relations, educational, or other services to a person whose property or interests in property are blocked pursuant to § 594.201(a).

Note to § 594.406. See §§ 594.506 and 594.507, respectively, on licensing policy with regard to the provision of certain legal or medical services.
31 CFR § 594.407

**§ 594.407 Offshore transactions.**
The prohibitions in §§ 594.201 and 594.204 on transactions or dealings involving blocked property apply to transactions or dealings by any U.S. person in a location outside the United States with respect to property that the U.S. person knows, or has reason to know, is held in the name of a person whose property or interests in property are blocked pursuant to § 594.201(a) or in which the U.S. person knows, or has reason to know, a person whose property or interests in property are blocked pursuant to § 594.201(a) has or has had an interest since the effective date.
31 CFR § 594.408

**§ 594.408 Payments from blocked accounts to satisfy obligations prohibited.**
Pursuant to §§ 594.201 and 594.204, no debits may be made to a blocked account to pay obligations to U.S. persons or other persons, except as authorized pursuant to this part.
31 CFR § 594.409

**§ 594.409 Charitable contributions.**
Unless otherwise specifically authorized by the Office of Foreign Assets Control by or pursuant to this part, no charitable contribution or donation of funds, goods, services, or technology, including those to relieve human suffering, such as food, clothing, or medicine, may be made to or for the benefit of a person whose property or interests in property are blocked pursuant to § 594.201(a). For purposes of this part, a contribution or donation is made to or for the benefit of a person whose property or interests in property are blocked pursuant to § 594.201(a) if made to or in the name of such a person; if made to or in the name of an entity or individual acting for or on behalf of, or owned or controlled by, such a person; or if made in an attempt to violate, to evade or to avoid the bar on the provision of contributions or donations to such a person.
31 CFR § 594.410

**§ 594.410 Credit extended and cards issued by U.S. financial institutions.**
The prohibitions in §§ 594.201 and 594.204 on engaging in transactions or dealings in property subject to those sections prohibits U.S. financial institutions from performing under any existing credit agreements, including, but not limited to, charge cards, debit cards, or other credit facilities issued by a U.S. financial institution to a person whose property or interests in property are blocked pursuant to § 594.201(a).

**Subpart E—Licenses, Authorizations and Statements of Licensing Policy**
31 CFR § 594.501

**§ 594.501 General and specific licensing procedures.**
For provisions relating to licensing procedures, see part 501, subpart D, of this chapter. Licensing actions taken pursuant to part 501 of this chapter with respect to the prohibitions contained in this part are considered actions taken pursuant to this

**Global Terrorism Sanctions Regulations, 68 FR 34196-01**

part.
31 CFR § 594.502

### § 594.502 Effect of license or authorization.

(a) No license or other authorization contained in this part, or otherwise issued by or under the direction of the Director of the Office of Foreign Assets Control, authorizes or validates any transaction effected prior to the issuance of the license, unless specifically provided in such license or authorization.

(b) No regulation, ruling, instruction, or license authorizes any transaction prohibited under this part unless the regulation, ruling, instruction or license is issued by the Office of Foreign Assets Control and specifically refers to this part. No regulation, ruling, instruction, or license referring to this part shall be deemed to authorize any transaction prohibited by any provision of this chapter unless the regulation, ruling, instruction, or license specifically refers to such provision.

(c) Any regulation, ruling, instruction, or license authorizing any transaction otherwise prohibited under this part has the effect of removing a prohibition contained in this part from the transaction, but only to the extent specifically stated by its terms. Unless the regulation, ruling, instruction, or license otherwise specifies, such an authorization does not create any right, duty, obligation, claim, or interest in, or with respect to, any property which would not otherwise exist under ordinary principles of law.
31 CFR § 594.503

### § 594.503 Exclusion from licenses and other authorizations.

The Director of the Office of Foreign Assets Control reserves the right to exclude any person, property, or transaction from the operation of any license or from the privileges conferred by any license. The Director of the Office of Foreign Assets Control also reserves the right to restrict the applicability of any license to particular persons, property, transactions, or classes thereof. Such actions are binding upon all persons receiving actual or constructive notice of the exclusions or restrictions.
31 CFR § 594.504

### § 594.504 Payments and transfers to blocked accounts in U.S. financial institutions.

Any payment of funds or transfer of credit in which a person whose property or interests in property are blocked pursuant to § 594.201(a) has any interest, that comes within the possession or control of a U.S. financial institution, must be blocked in an account on the books of that financial institution. A transfer of funds or credit by a U.S. financial institution between blocked accounts in its branches or offices is authorized, provided that no transfer is made from an account within the United States to an account held outside the United States, and further provided that a transfer from a blocked account may only be made to another blocked account held in the same name.

Note to § 594.504. Please refer to § 501.603 of this chapter for mandatory reporting requirements regarding financial transfers. See also § 594.203 concerning the obligation to hold blocked funds in interest-bearing accounts.
31 CFR § 594.505

### § 594.505 Entries in certain accounts for normal service charges authorized.

(a) A U.S. financial institution is authorized to debit any blocked account held at that financial institution in payment or reimbursement for normal service charges owed it by the owner of that blocked account.

(b) As used in this section, the term normal service charge shall include charges in payment or reimbursement for interest due; cable, telegraph, internet, or telephone charges; postage costs; custody fees; small adjustment charges to correct bookkeeping errors; and, but not by way of limitation, minimum balance charges, notary and protest fees, and charges for reference books, photocopies, credit reports, transcripts of statements, registered mail, insurance, stationery and supplies, and other similar items. *34203
31 CFR § 594.506

### § 594.506 Provision of certain legal services authorized.

(a) The provision of the following legal services to or on behalf of persons whose property or interests in property are blocked pursuant to § 594.201(a) is authorized, provided that all receipts of payment of professional fees and reimbursement of incurred expenses must be specifically licensed:

(1) Provision of legal advice and counseling on the requirements of and compliance with the laws of any jurisdiction within the United States, provided that such advice and counseling are not provided to facilitate transactions in violation of this part;

(2) Representation of persons when named as defendants in or otherwise made parties to domestic U.S. legal, arbitration, or administrative proceedings;

(3) Initiation and conduct of domestic U.S. legal, arbitration, or administrative proceedings in defense of property interests subject to U.S. jurisdiction;

(4) Representation of persons before any federal or state agency with respect to the imposition, administration, or enforcement of U.S. sanctions against such persons; and

(5) Provision of legal services in any other context in which prevailing U.S. law requires access to legal counsel at public expense.

(b) The provision of any other legal services to persons whose property or interests in property are blocked pursuant to § 594.201(a), not otherwise authorized in this part, requires the issuance of a specific license.

(c) Entry into a settlement agreement affecting property or interests in property or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 594.201(a) is prohibited except to the extent otherwise provided by law or unless specifically licensed in accordance with § 594.202(e).

31 CFR § 594.507

### § 594.507 Authorization of emergency medical services.
The provision of nonscheduled emergency medical services in the United States to persons whose property or interests in property are blocked pursuant to § 594.201(a) is authorized, provided that all receipt of payment for such services must be specifically licensed.

31 CFR § 594.508

### § 594.508 Transactions related to telecommunications authorized.
All transactions ordinarily incident to the receipt or transmission of telecommunications involving persons whose property or interests in property are blocked pursuant to § 594.201(a) are authorized, provided that any payment owed to any such person is paid into a blocked account in a U.S. financial institution. This section does not authorize the provision, sale, or lease to persons whose property or interests in property are blocked pursuant to § 594.201(a) of telecommunications equipment or technology; nor does it authorize the provision, sale, or leasing of capacity on telecommunications transmission facilities (such as satellite or terrestrial network connectivity).

31 CFR § 594.509

### § 594.509 Transactions related to mail authorized.
All transactions by U.S. persons, including payment and transfers to common carriers, incident to the receipt or transmission of mail between a U.S. person and a person whose property or interests in property are blocked pursuant to § 594.201(a) are authorized, provided the mail is limited to personal communications not involving a transfer of anything of value and not exceeding 12 ounces in weight.

### Subpart F—Reports
31 CFR § 594.601

### § 594.601 Records and reports.
For provisions relating to required records and reports, see part 501, subpart C, of this chapter. Recordkeeping and reporting requirements imposed by part 501 of this chapter with respect to the prohibitions contained in this part are considered requirements arising pursuant to this part.

Global Terrorism Sanctions Regulations, 68 FR 34196-01

**Subpart G—Penalties**
31 CFR § 594.701

**§ 594.701 Penalties.**
(a) Attention is directed to section 206 of the International Emergency Economic Powers Act (the "Act") (50 U.S.C. 1705), which is applicable to violations of the provisions of any license, ruling, regulation, order, direction, or instruction issued by or pursuant to the direction or authorization of the Secretary of the Treasury pursuant to this part or otherwise under the Act. Section 206 of the Act, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (Pub. L. 101-410, as amended, 28 U.S.C. 2461 note), provides that:

(1) A civil penalty not to exceed $11,000 per violation may be imposed on any person who violates or attempts to violate any license, order, or regulation issued under the Act;

(2) Whoever willfully violates or willfully attempts to violate any license, order, or regulation issued under the Act, upon conviction, shall be fined not more than $50,000, and if a natural person, may also be imprisoned for not more than 10 years; and any officer, director, or agent of any corporation who knowingly participates in such violation may be punished by a like fine, imprisonment, or both.

(b) The criminal penalties provided in the Act are subject to increase pursuant to 18 U.S.C. 3571.

(c) Attention is directed to section 5 of the United Nations Participation Act (22 U.S.C. 287c(b)), which provides that any person who willfully violates or evades or attempts to violate or evade any order, rule, or regulation issued by the President pursuant to the authority granted in that section, upon conviction, shall be fined not more than $10,000 and, if a natural person, may also be imprisoned for not more than 10 years; and the officer, director, or agent of any corporation who knowingly participates in such violation or evasion shall be punished by a like fine, imprisonment, or both and any property, funds, securities, papers, or other articles or documents, or any vessel, together with her tackle, apparel, furniture, and equipment, or vehicle, or aircraft, concerned in such violation shall be forfeited to the United States. The criminal penalties provided in the United Nations Participation Act are subject to increase pursuant to 18 U.S.C. 3571.

(d) Attention is also directed to 18 U.S.C. 1001, which provides that whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device, a material fact, or makes any materially false, fictitious, or fraudulent statement or representation or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry shall be fined under title 18, United States Code, or imprisoned not more than five years, or both.

(e) Violations of this part may also be subject to relevant provisions of other applicable laws.
31 CFR § 594.702

**§ 594.702 Prepenalty notice.**
(a) When required. If the Director of the Office of Foreign Assets Control has reasonable cause to believe that there has occurred a violation of any provision of this part or a violation of the provisions of any license, ruling, regulation, order, direction, or instruction issued by or pursuant to the direction or authorization of the Secretary of the Treasury pursuant to *34204 this part or otherwise under the International Emergency Economic Powers Act, and the Director determines that further proceedings are warranted, the Director shall notify the alleged violator of the agency's intent to impose a monetary penalty by issuing a prepenalty notice. The prepenalty notice shall be in writing. The prepenalty notice may be issued whether or not another agency has taken any action with respect to the matter.

(b) Contents of notice—(1) Facts of violation. The prepenalty notice shall describe the violation, specify the laws and regulations allegedly violated, and state the amount of the proposed monetary penalty.

(2) Right to respond. The prepenalty notice also shall inform the respondent of the respondent's right to make a written presentation within the applicable 30-day period set forth in § 594.703 as to why a monetary penalty should not be imposed or why, if imposed, the monetary penalty should be in a lesser amount than proposed.

**Global Terrorism Sanctions Regulations, 68 FR 34196-01**

(c) Informal settlement prior to issuance of prepenalty notice. At any time prior to the issuance of a prepenalty notice, an alleged violator may request in writing that, for a period not to exceed sixty (60) days, the agency withhold issuance of the prepenalty notice for the exclusive purpose of effecting settlement of the agency's potential civil monetary penalty claims. In the event the Director grants the request, under terms and conditions within his discretion, the Office of Foreign Assets Control will agree to withhold issuance of the prepenalty notice for a period not to exceed 60 days and will enter into settlement negotiations of the potential civil monetary penalty claim.
31 CFR § 594.703

**§ 594.703 Response to prepenalty notice; informal settlement.**
(a) Deadline for response. The respondent may submit a response to the prepenalty notice within the applicable 30-day period set forth in this paragraph. The Director may grant, at his discretion, an extension of time in which to submit a response to the prepenalty notice. The failure to submit a response within the applicable time period set forth in this paragraph shall be deemed to be a waiver of the right to respond.

(1) Computation of time for response. A response to the prepenalty notice must be postmarked or date-stamped by the U.S. Postal Service (or foreign postal service, if mailed abroad) or courier service provider (if transmitted to OFAC by courier) on or before the 30th day after the postmark date on the envelope in which the prepenalty notice was mailed. If the respondent refused delivery or otherwise avoided receipt of the prepenalty notice, a response must be postmarked or date-stamped on or before the 30th day after the date on the stamped postal receipt maintained at the Office of Foreign Assets Control. If the prepenalty notice was personally delivered to the respondent by a non-U.S. Postal Service agent authorized by the Director, a response must be postmarked or date-stamped on or before the 30th day after the date of delivery.

(2) Extensions of time for response. If a due date falls on a federal holiday or weekend, that due date is extended to include the following business day. Any other extensions of time will be granted, at the Director's discretion, only upon the respondent's specific request to the Office of Foreign Assets Control.

(b) Form and method of response. The response must be submitted in writing and may be handwritten or typed. The response need not be in any particular form. A copy of the written response may be sent by facsimile, but the original also must be sent to the Office of Foreign Assets Control Civil Penalties Division by mail or courier and must be postmarked or date-stamped, in accordance with paragraph (a) of this section.

(c) Contents of response. A written response must contain information sufficient to indicate that it is in response to the prepenalty notice.

(1) A written response must include the respondent's full name, address, telephone number, and facsimile number, if available, or those of the representative of the respondent.

(2) A written response should either admit or deny each specific violation alleged in the prepenalty notice and also state if the respondent has no knowledge of a particular violation. If the written response fails to address any specific violation alleged in the prepenalty notice, that alleged violation shall be deemed to be admitted.

(3) A written response should include any information in defense, evidence in support of an asserted defense, or other factors that the respondent requests the Office of Foreign Assets Control to consider. Any defense or explanation previously made to the Office of Foreign Assets Control or any other agency must be repeated in the written response. Any defense not raised in the written response will be considered waived. The written response also should set forth the reasons why the respondent believes the penalty should not be imposed or why, if imposed, it should be in a lesser amount than proposed.

(d) Default. If the respondent elects not to submit a written response within the time limit set forth in paragraph (a) of this section, the Office of Foreign Assets Control will conclude that the respondent has decided not to respond to the prepenalty notice. The agency generally will then issue a written penalty notice imposing the penalty proposed in the prepenalty notice.

(e) Informal settlement. In addition to or as an alternative to a written response to a prepenalty notice, the respondent or respondent's representative may contact the Office of Foreign Assets Control as advised in the prepenalty notice to propose the settlement of allegations contained in the prepenalty notice and related matters. However, the requirements set forth in paragraph (f) of this section as to oral communication by the representative must first be fulfilled. In the event of settlement

at the prepenalty stage, the claim proposed in the prepenalty notice will be withdrawn, the respondent will not be required to take a written position on allegations contained in the prepenalty notice, and the Office of Foreign Assets Control will make no final determination as to whether a violation occurred. The amount accepted in settlement of allegations in a prepenalty notice may vary from the civil penalty that might finally be imposed in the event of a formal determination of violation. In the event no settlement is reached, the time limit specified in paragraph (a) of this section for written response to the prepenalty notice will remain in effect unless additional time is granted by the Office of Foreign Assets Control.

(f) Representation. A representative of the respondent may act on behalf of the respondent, but any oral communication with the Office of Foreign Assets Control prior to a written submission regarding the specific allegations contained in the prepenalty notice must be preceded by a written letter of representation, unless the prepenalty notice was served upon the respondent in care of the representative.
 31 CFR § 594.704

### § 594.704 Penalty imposition or withdrawal.
(a) No violation. If, after considering any response to the prepenalty notice and any relevant facts, the Director of the Office of Foreign Assets Control determines that there was no violation by the respondent named in the prepenalty notice, the Director shall notify the respondent in writing of that determination and of the cancellation of the proposed monetary penalty.

(b) Violation. (1) If, after considering any written response to the prepenalty *34205 notice, or default in the submission of a written response, and any relevant facts, the Director of the Office of Foreign Assets Control determines that there was a violation by the respondent named in the prepenalty notice, the Director is authorized to issue a written penalty notice to the respondent of the determination of the violation and the imposition of the monetary penalty.

(2) The penalty notice shall inform the respondent that payment or arrangement for installment payment of the assessed penalty must be made within 30 days of the date of mailing of the penalty notice by the Office of Foreign Assets Control.

(3) The penalty notice shall inform the respondent of the requirement to furnish the respondent's taxpayer identification number pursuant to 31 U.S.C. 7701 and that such number will be used for purposes of collecting and reporting on any delinquent penalty amount.

(4) The issuance of the penalty notice finding a violation and imposing a monetary penalty shall constitute final agency action. The respondent has the right to seek judicial review of that final agency action in a federal district court.
 31 CFR § 594.705

### § 594.705 Administrative collection; referral to United States Department of Justice.
In the event that the respondent does not pay the penalty imposed pursuant to this part or make payment arrangements acceptable to the Director of the Office of Foreign Assets Control within 30 days of the date of mailing of the penalty notice, the matter may be referred for administrative collection measures by the Department of the Treasury or to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a federal district court.

### Subpart H—Procedures
31 CFR § 594.801

### § 594.801 Procedures.
For license application procedures and procedures relating to amendments, modifications, or revocations of licenses; administrative decisions; rulemaking; and requests for documents pursuant to the Freedom of Information and Privacy Acts (5 U.S.C. 552 and 552a), see part 501, subpart D, of this chapter.
 31 CFR § 594.802

### § 594.802 Delegation by the Secretary of the Treasury.
Any action that the Secretary of the Treasury is authorized to take pursuant to Executive Order 13224 of September 23, 2001 (66 FR 49079, September 25, 2001), and any further Executive orders relating to the national emergency declared therein, may be taken by the Director of the Office of Foreign Assets Control or by any other person to whom the Secretary of the Treasury has delegated authority so to act.

Global Terrorism Sanctions Regulations, 68 FR 34196-01

**Subpart I—Paperwork Reduction Act**
31 CFR § 594.901

**§ 594.901 Paperwork Reduction Act notice.**
For approval by the Office of Management and Budget ("OMB") under the Paperwork Reduction Act of 1995 (44 U.S.C. 3507) of information collections relating to recordkeeping and reporting requirements, licensing procedures (including those pursuant to statements of licensing policy), and other procedures, see 501.901 of this chapter. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by OMB.

Dated: May 13, 2003.

R. Richard Newcomb,

Director, Office of Foreign Assets Control.


Approved: May 22, 2003.

Juan C. Zarate,

Deputy Assistant Secretary (Terrorist Financing and Financial Crimes), Department of the Treasury.


[FR Doc. 03-14251 Filed 6-3-03; 8:50 am]

BILLING CODE 4810-25-P

**End of Document**                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

**Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01**

74 FR 16771-01
RULES and REGULATIONS
DEPARTMENT OF THE TREASURY
Office of Foreign Assets Control
31 CFR Part 544

Weapons of Mass Destruction Proliferators Sanctions Regulations

Monday, April 13, 2009

AGENCY: Office of Foreign Assets Control, Treasury.

**\*16771** ACTION: Final rule.

SUMMARY: The Department of the Treasury's Office of Foreign Assets Control ("OFAC") is adding a new part to the Code of Federal Regulations to carry out the purposes of Executive Order 13382 of June 28, 2005, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters."
DATES: Effective Date: April 13, 2009.

FOR FURTHER INFORMATION CONTACT: Assistant Director for Compliance, Outreach & Implementation, tel.: 202/622-2490, Assistant Director for Licensing, tel.: 202/622-2480, Assistant Director for Policy, tel.: 202/622-4855, Office of Foreign Assets Control, or Chief Counsel (Foreign Assets Control), tel.: 202/622-2410, Office of the General Counsel, Department of the Treasury (not toll free numbers).

SUPPLEMENTARY INFORMATION:

**Electronic and Facsimile Availability**
This document and additional information concerning OFAC are available from OFAC's Web site (http://www.treas.gov/ofac) or via facsimile through a 24-hour fax-on demand service, tel.: 202/622-0077.

**\*16772 Background**
On June 28, 2005, the President, invoking the authority of, inter alia, the International Emergency Economic Powers Act (50 U.S.C. 1701-1706) ("IEEPA"), issued Executive Order 13382 (70 FR 38567, July 1, 2005) ("E.O. 13382"), effective at 12:01 a.m. eastern daylight time on June 29, 2005. In E.O. 13382, the President took additional steps with respect to the national emergency described and declared in Executive Order 12938 of November 14, 1994, regarding the proliferation of weapons of mass destruction and the means of delivering them.

Section 1 of E.O. 13382 blocks, with certain exceptions, all property and interests in property that are in the United States, that come within the United States, or that are or come within the possession or control of United States persons, of: (1) The persons listed in an Annex to E.O. 13382; (2) any foreign person determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Attorney General, and other relevant agencies, to have engaged, or attempted to engage, in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery (including missiles capable of delivering such weapons), including any efforts to manufacture, acquire, possess, develop, transport, transfer or use such items, by any person or foreign country of proliferation concern; (3) any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to have provided, or attempted to provide, financial, material, technological or other support for, or goods or services in support of, any activity or transaction described in clause (2) above, or any person whose property and interests in property are blocked pursuant to E.O. 13382; and (4) any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to E.O. 13382.

Section 1 of E.O. 13382 further provides that the prohibition on any transaction or dealing by a United States person or within the United States in blocked property or interests in property includes, but is not limited to, the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of, any person whose property and interests in property are blocked pursuant to E.O. 13382, and the receipt of any contribution or provision of funds, goods, or services from any such person. Section 1 of E.O. 13382 further prohibits any transaction by a United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in E.O. 13382, as well as any conspiracy formed to violate such prohibitions.

In Section 3 of E.O. 13382, the President determined that the making of donations of certain articles, such as food, clothing, and medicine intended to relieve human suffering, as specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)), by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to E.O. 13382 would seriously impair his ability to deal with the national emergency declared in Executive Order 12938, and the President therefore prohibited such donations. Accordingly, the donation of such items is prohibited unless authorized by OFAC.

Section 6 of E.O. 13382 authorizes the Secretary of the Treasury, in consultation with the Secretary of State, to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes of E.O. 13382. In furtherance of those purposes, OFAC is promulgating the Weapons of Mass Destruction Proliferators Sanctions Regulations, 31 CFR part 544 (the "Regulations").

Subpart A of the Regulations, which discusses the relation of the Regulations to other economic sanctions programs, includes a Note to § 544.101 clarifying that the sanctions implemented pursuant to the Weapons of Mass Destruction Trade Control Regulations set forth in 31 CFR part 539 are separate and distinct from the sanctions implemented pursuant to these Regulations, even though both programs are based on the same declaration of national emergency in Executive Order 12938 of November 14, 1994. Accordingly, a "designated foreign person" whose goods, technology, or services are prohibited from being imported into the United States under the Weapons of Mass Destruction Trade Control Regulations is not necessarily a person whose property and interests in property are blocked pursuant to these Regulations. Consequently, the property and interests in property of a "designated foreign person" under the Weapons of Mass Destruction Trade Control Regulations are not necessarily blocked by these Regulations, unless the "designated foreign person" has separately become a person whose property and interests in property are blocked pursuant to these Regulations. However, the importation into the United States of goods, technology, or services (other than informational or informational materials) produced or provided by a "designated foreign person" under the Weapons of Mass Destruction Trade Control Regulations remains prohibited. To help the public distinguish between these two programs, persons designated by the Secretary of State under the Weapons of Mass Destruction Trade Control Regulations are listed in a separate appendix to part 539 and are not listed on OFAC's Specially Designated Nationals and Blocked Persons List ("SDN list"), which is accessible via OFAC's Web site and can be found at Appendix A to 31 CFR chapter V. Persons whose property and interests in property are blocked under these Regulations are listed on OFAC's SDN list with the identifier "[NPWMD]."

Subpart B of the Regulations implements the prohibitions contained in Section 1 of E.O. 13382. See, e.g., §§ 544.201 and 544.205. Persons identified in the Annex to E.O. 13382, designated by the Secretary of State or the Secretary of the Treasury pursuant to E.O. 13382, or otherwise subject to the blocking provisions of E.O. 13382 are referred to throughout the Regulations as "persons whose property and interests in property are blocked pursuant to § 544.201(a)." The names of persons listed in or designated pursuant to E.O. 13382 are or will be published on OFAC's SDN list. Those names also have been or will be published in the Federal Register.

Sections 544.202 and 544.203 of subpart B detail the effect of transfers of blocked property in violation of the Regulations and set forth the requirement to hold blocked funds, such as currency, bank deposits, and liquidated financial obligations, in interest-bearing blocked accounts. Section 544.204 of subpart B provides that all expenses incident to the maintenance of blocked physical property shall be the responsibility of the owners or operators of such property and that such expenses shall not be met from blocked funds, unless otherwise authorized. The section further provides that blocked property may, in OFAC's discretion, be sold or liquidated and the net proceeds placed in a blocked interest-bearing account in the name of the owner of the property.

*16773 Section 544.205 implements the prohibitions of E.O. 13382 on any transaction by a United States person or within

Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01

the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in E.O. 13382, and on any conspiracy formed to violate such prohibitions.

Section 544.206 of subpart B details transactions that are exempt from the prohibitions of part 544 pursuant to sections 203(b)(1), (3), and (4) of IEEPA (50 U.S.C. 1702(b)(1), (3), and (4)). These exemptions relate to personal communications, the importation and exportation of information or informational materials, and transactions ordinarily incident to travel. The President determined in Section 3 of E.O. 13382 that donations of the type of articles specified in Sec. 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)), i.e., articles such as food, clothing, and medicine intended to relieve human suffering, by, to, or for the benefit of any person whose property and interests in property are blocked would seriously impair the President's ability to deal with the declared national emergency. Accordingly, such donations are not exempted from these Regulations and are prohibited, unless authorized by OFAC.

Subpart C of part 544 defines key terms used throughout the Regulations, and subpart D sets forth interpretive sections regarding the general prohibitions contained in subpart B. Section 544.411 sets out the rule that the property and interests in property of an entity are blocked if the entity is 50 percent or more owned by a person whose property and interests in property are blocked, whether or not the entity itself is named in the Annex to E.O. 13382 or designated by the Secretary of State or OFAC.

Transactions otherwise prohibited under part 544 but found to be consistent with U.S. policy may be authorized by one of the general licenses contained in subpart E or by a specific license issued pursuant to the procedures described in subpart E of part 501 of 31 CFR chapter V. In addition to the general licenses, subpart E of part 544 also contains certain statements of licensing policy.

Subpart F of part 544 refers to subpart C of part 501 for applicable recordkeeping and reporting requirements. Subpart G describes the civil and criminal penalties applicable to violations of the Regulations, as well as the procedures governing the potential imposition of a civil monetary penalty. Subpart G also refers to Appendix A of part 501 for a more complete description of these procedures.

Subpart H of part 544 refers to subpart E of part 501 for applicable provisions relating to administrative procedures and memorializes a delegation of authority by the Secretary of the Treasury. Subpart I of the Regulations sets forth a Paperwork Reduction Act notice.

**Public Participation**
Because the Regulations involve a foreign affairs function, the provisions of Executive Order 12866 and the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, opportunity for public participation, and delay in effective date are inapplicable. Because no notice of proposed rulemaking is required for this rule, the Regulatory Flexibility Act (5 U.S.C. 601-612) does not apply.

**Paperwork Reduction Act**
The collections of information related to the Regulations are contained in 31 CFR part 501 (the "Reporting, Procedures and Penalties Regulations"). Pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3507), those collections of information have been approved by the Office of Management and Budget under control number 1505-0164. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid control number.

**List of Subjects in 31 CFR Part 544**
Administrative practice and procedure, Banks, Banking, Blocking of assets, Credit, Foreign trade, Penalties, Proliferation, Reporting and recordkeeping requirements, Securities, Services, Weapons of mass destruction.

For the reasons set forth in the preamble, the Department of the Treasury's Office of Foreign Assets Control adds part 544 to 31 CFR chapter V to read as follows:

Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01

## PART 544—WEAPONS OF MASS DESTRUCTION PROLIFERATORS SANCTIONS REGULATIONS

**Subpart A—Relation of This Part to Other Laws and Regulations**

Sec.

544.101 Relation of this part to other laws and regulations.

**Subpart B—Prohibitions**

544.201 Prohibited transactions involving blocked property.

544.202 Effect of transfers violating the provisions of this part.

544.203 Holding of funds in interest-bearing accounts; investment and reinvestment.

544.204 Expenses of maintaining blocked physical property; liquidation of blocked property.

544.205 Evasions; attempts; conspiracies.

544.206 Exempt transactions.

**Subpart C—General Definitions**

544.301 Blocked account; blocked property.

544.302 Effective date.

544.303 Entity.

544.304 Information or informational materials.

544.305 Interest.

544.306 Licenses; general and specific.

544.307 Person.

544.308 Property; property interest.

544.309 Transfer.

544.310 United States.

544.311 U.S. financial institution.

544.312 United States person; U.S. person.

**Subpart D—Interpretations**

544.401 Reference to amended sections.

544.402 Effect of amendment.

544.403 Termination and acquisition of an interest in blocked property.

544.404 Transactions ordinarily incident to a licensed transaction.

**Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01**

544.405 Provision of services.

544.406 Offshore transactions.

544.407 Payments from blocked accounts to satisfy obligations prohibited.

544.408 Charitable contributions.

544.409 Credit extended and cards issued by U.S. financial institutions.

544.410 Setoffs prohibited.

544.411 Entities owned by a person whose property and interests in property are blocked.

**Subpart E—Licenses, Authorizations and Statements of Licensing Policy**

544.501 General and specific licensing procedures.

544.502 Effect of license or authorization.

544.503 Exclusion from licenses.

544.504 Payments and transfers to blocked accounts in U.S. financial institutions.

544.505 Entries in certain accounts for normal service charges authorized.

544.506 Investment and reinvestment of certain funds.

544.507 Provision of certain legal services authorized.

544.508 Authorization of emergency medical services.

**Subpart F—Reports**

544.601 Records and reports.

**Subpart G—Penalties**

544.701 Penalties.

544.702 Pre-Penalty Notice; settlement.

544.703 Penalty imposition.

544.704 Administrative collection; referral to United States Department of Justice.

**Subpart H—Procedures**

544.801 Procedures.

544.802 Delegation by the Secretary of the Treasury.

**Subpart I—Paperwork Reduction Act**

544.901 Paperwork Reduction Act notice.
**\*16774** Authority: 3 U.S.C. 301; 31 U.S.C. 321(b); 50 U.S.C. 1601-1651, 1701-1706; Public Law 101-410, 104 Stat. 890 (28 U.S.C. 2461 note); Public Law 110-96, 121 Stat. 1011; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13094, 63 FR 40803, 3 CFR, 1998 Comp., p. 200; E.O. 13382, 70 FR 38567, 3 CFR, 2005 Comp., p. 170.

### Subpart A—Relation of This Part to Other Laws and Regulations
31 CFR § 544.101

#### § 544.101 Relation of this part to other laws and regulations.
This part is separate from, and independent of, the other parts of this chapter, with the exception of part 501 of this chapter, the recordkeeping and reporting requirements and license application and other procedures of which apply to this part. Actions taken pursuant to part 501 of this chapter with respect to the prohibitions contained in this part are considered actions taken pursuant to this part. Differing foreign policy and national security circumstances may result in differing interpretations of similar language among the parts of this chapter. No license or authorization contained in or issued pursuant to those other parts authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to any other provision of law or regulation authorizes any transaction prohibited by this part. No license or authorization contained in or issued pursuant to this part relieves the involved parties from complying with any other applicable laws or regulations.

Note to § 544.101: The sanctions implemented pursuant to the Weapons of Mass Destruction Trade Control Regulations set forth in part 539 of this chapter are separate and distinct from the sanctions implemented pursuant to this part, even though both programs have been imposed pursuant to the same declaration of national emergency in Executive Order 12938 of November 14, 1994. Accordingly, a "designated foreign person" whose goods, technology, or services are prohibited from being imported into the United States under part 539 is not necessarily a person whose property and interests in property are blocked pursuant to § 544.201(a). Consequently, the property and interests in property of a "designated foreign person" under part 539 are not blocked, unless the "designated foreign person" has separately become a person whose property and interests in property are blocked pursuant to § 544.201(a) or any other part of 31 CFR chapter V. Note, however, that the importation into the United States of goods, technology, or services (other than information or informational materials) produced or provided by a "designated foreign person" under part 539 is prohibited by that part.

### Subpart B—Prohibitions
31 CFR § 544.201

#### § 544.201 Prohibited transactions involving blocked property.
(a) Except as authorized by regulations, orders, directives, rulings, instructions, licenses or otherwise, and notwithstanding any contracts entered into or any license or permit granted prior to the effective date, all property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons, including their overseas branches, of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in:

(1) Any person listed in the Annex to Executive Order 13382 of June 28, 2005 (70 FR 38567, July 1, 2005);

(2) Any foreign person determined by the Secretary of State, in consultation with the Secretary of the Treasury, the Attorney General, and other relevant agencies, to have engaged, or attempted to engage, in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery (including missiles capable of delivering such weapons), including any efforts to manufacture, acquire, possess, develop, transport, transfer or use such items, by any person or foreign country of proliferation concern;

(3) Any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to have provided, or attempted to provide, financial, material, technological or other support for, or goods or services in support of, any activity or transaction described in paragraph (a)(2) of this section, or any person whose property and interests in property are blocked pursuant to this section; and

(4) Any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this section.

Note to paragraph (a) of § 544.201: 1. The names of persons listed in or designated pursuant to Executive Order 13382,

A53

whose property and interests in property are blocked pursuant to paragraph (a) of this section, are published on the Office of Foreign Assets Control's Specially Designated Nationals and Blocked Persons List ("SDN" list) (which is accessible via the Office of Foreign Assets Control's Web site), published in the Federal Register, and incorporated into Appendix A to this chapter with the identifier "[NPWMD]." See § 544.411 concerning entities that may not be listed on the SDN list but whose property and interests in property are nevertheless blocked pursuant to paragraph (a) of this section.

2. Section 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1706) ("IEEPA") explicitly authorizes the blocking of property and interests in property of a person during the pendency of an investigation. The names of persons whose property and interests in property are blocked pending investigation pursuant to this part also are published on the SDN list, published in the Federal Register, and incorporated into Appendix A to this chapter with the identifier "[BPI-NPWMD]."

3. Sections 501.806 and 501.807 of this chapter describe the procedures to be followed by persons seeking, respectively, the unblocking of funds that they believe were blocked due to mistaken identity, or administrative reconsideration of their status as persons whose property and interests in Property are blocked pursuant to paragraph (a) of this section.

(b) The prohibitions in paragraph (a) of this section include, but are not limited to, prohibitions on the following transactions when engaged in by a United States person or within the United States:

(1) The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to paragraph (a) of this section; and

(2) The receipt of any contribution or provision of funds, goods, or services from any person whose property and interests in property are blocked pursuant to paragraph (a) of this section.

(c) Unless otherwise authorized by this part or by a specific license expressly referring to this section, any dealing in any security (or evidence thereof) held within the possession or control of a U.S. person and either registered or inscribed in the name of, or known to be held for the benefit of, or issued by, any person whose property and interests in property are blocked pursuant to paragraph (a) of this section is prohibited. This prohibition includes but is not limited to the transfer (including the transfer on the books of any issuer or agent thereof), disposition, transportation, importation, exportation, or withdrawal of, or the endorsement or guaranty of signatures on, any such security on or after the effective date. This prohibition applies irrespective of the fact that at any time (whether prior to, on, or subsequent to the effective date) the registered or inscribed owner *16775 of any such security may have or might appear to have assigned, transferred, or otherwise disposed of the security.

31 CFR § 544.202

### § 544.202 Effect of transfers violating the provisions of this part.

(a) Any transfer after the effective date that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 544.201(a), is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interests.

(b) No transfer before the effective date shall be the basis for the assertion or recognition of any right, remedy, power, or privilege with respect to, or any interest in, any property or interest in property blocked pursuant to § 544.201(a), unless the person who holds or maintains such property, prior to that date, had written notice of the transfer or by any written evidence had recognized such transfer.

(c) Unless otherwise provided, an appropriate license or other authorization issued by or pursuant to the direction or authorization of the Director of the Office of Foreign Assets Control before, during, or after a transfer shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of IEEPA, Executive Order 13382, this part, and any regulation, order, directive, ruling, instruction, or license issued pursuant to this part.

(d) Transfers of property that otherwise would be null and void or unenforceable by virtue of the provisions of this section shall not be deemed to be null and void or unenforceable as to any person with whom such property is or was held or

maintained (and as to such person only) in cases in which such person is able to establish to the satisfaction of the Director of the Office of Foreign Assets Control each of the following:

(1) Such transfer did not represent a willful violation of the provisions of this part by the person with whom such property is or was held or maintained (and as to such person only);

(2) The person with whom such property is or was held or maintained did not have reasonable cause to know or suspect, in view of all the facts and circumstances known or available to such person, that such transfer required a license or authorization issued pursuant to this part and was not so licensed or authorized, or, if a license or authorization did purport to cover the transfer, that such license or authorization had been obtained by misrepresentation of a third party or withholding of material facts or was otherwise fraudulently obtained; and

(3) The person with whom such property is or was held or maintained filed with the Office of Foreign Assets Control a report setting forth in full the circumstances relating to such transfer promptly upon discovery that:

(i) Such transfer was in violation of the provisions of this part or any regulation, ruling, instruction, license, or other directive or authorization issued pursuant to this part;

(ii) Such transfer was not licensed or authorized by the Director of the Office of Foreign Assets Control; or

(iii) If a license did purport to cover the transfer, such license had been obtained by misrepresentation of a third party or withholding of material facts or was otherwise fraudulently obtained.

Note to paragraph (d) of § 544.202: The filing of a report in accordance with the provisions of paragraph (d)(3) of this section shall not be deemed evidence that the terms of paragraphs (d)(1) and (d)(2) of this section have been satisfied.

(e) Unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which, on or since the effective date, there existed an interest of a person whose property and interests in property are blocked pursuant to § 544.201(a).
 31 CFR § 544.203

### § 544.203 Holding of funds in interest-bearing accounts; investment and reinvestment.
(a) Except as provided in paragraphs (c) or (d) of this section, or as otherwise directed by the Office of Foreign Assets Control, any U.S. person holding funds, such as currency, bank deposits, or liquidated financial obligations, subject to § 544.201(a) shall hold or place such funds in a blocked interest-bearing account located in the United States.

(b)(1) For purposes of this section, the term blocked interest-bearing account means a blocked account:

(i) In a federally-insured U.S. bank, thrift institution, or credit union, provided the funds are earning interest at rates that are commercially reasonable; or

(ii) With a broker or dealer registered with the Securities and Exchange Commission under the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), provided the funds are invested in a money market fund or in U.S. Treasury bills.

(2) For purposes of this section, a rate is commercially reasonable if it is the rate currently offered to other depositors on deposits or instruments of comparable size and maturity.

(3) Funds held or placed in a blocked account pursuant to this paragraph (b) may not be invested in instruments the maturity of which exceeds 180 days. If interest is credited to a separate blocked account or subaccount, the name of the account party on each account must be the same.

(c) Blocked funds held in instruments the maturity of which exceeds 180 days at the time the funds become subject to § 544.201(a) may continue to be held until maturity in the original instrument, provided any interest, earnings, or other proceeds derived therefrom are paid into a blocked interest-bearing account in accordance with paragraphs (b) or (d) of this section.

(d) Blocked funds held in accounts or instruments outside the United States at the time the funds become subject to § 544.201(a) may continue to be held in the same type of accounts or instruments, provided the funds earn interest at rates that are commercially reasonable.

(e) This section does not create an affirmative obligation for the holder of blocked tangible property, such as chattels or real estate, or of other blocked property, such as debt or equity securities, to sell or liquidate such property. However, the Office of Foreign Assets Control may issue licenses permitting or directing such sales or liquidation in appropriate cases.

(f) Funds subject to this section may not be held, invested, or reinvested in a manner that provides immediate financial or economic benefit or access to any person whose property and interests in property are blocked pursuant to § 544.201(a), nor may their holder cooperate in or facilitate the pledging or other attempted use as collateral of blocked funds or other assets.
 31 CFR § 544.204

### § 544.204 Expenses of maintaining blocked physical property; liquidation of blocked property.
(a) Except as otherwise authorized, and notwithstanding the existence of any rights or obligations conferred or imposed by any international agreement or contract entered into or any license or permit granted prior to the effective date, all expenses incident to the maintenance of physical property blocked pursuant to § 544.201(a) shall be the responsibility of the owners or operators of such property, which **\*16776** expenses shall not be met from blocked funds.

(b) Property blocked pursuant to § 544.201(a) may, in the discretion of the Office of Foreign Assets Control, be sold or liquidated and the net proceeds placed in a blocked interest-bearing account in the name of the owner of the property.
 31 CFR § 544.205

### § 544.205 Evasions; attempts; conspiracies.
(a) Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any transaction by a U.S. person or within the United States on or after the effective date that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in this part is prohibited.

(b) Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any conspiracy formed to violate the prohibitions set forth in this part is prohibited.
 31 CFR § 544.206

### § 544.206 Exempt transactions.
(a) Personal communications. The prohibitions contained in this part do not apply to any postal, telegraphic, telephonic, or other personal communication that does not involve the transfer of anything of value.

(b) Information or informational materials. (1) The importation from any country and the exportation to any country of any information or informational materials, as defined in § 544.304, whether commercial or otherwise, regardless of format or medium of transmission, are exempt from the prohibitions of this part.

(2) This section does not exempt from regulation or authorize transactions related to information or informational materials not fully created and in existence at the date of the transactions, or to the substantive or artistic alteration or enhancement of informational materials, or to the provision of marketing and business consulting services. Such prohibited transactions include, but are not limited to, payment of advances for information or informational materials not yet created and completed (with the exception of prepaid subscriptions for widely circulated magazines and other periodical publications); provision of services to market, produce or co-produce, create, or assist in the creation of information or informational materials; and, with respect to information or informational materials imported from persons whose property and interests in property are blocked pursuant to § 544.201(a), payment of royalties with respect to income received for enhancements or alterations made by U.S. persons to such information or informational materials.

(3) This section does not exempt or authorize transactions incident to the exportation of software subject to the Export Administration Regulations, 15 CFR parts 730-774, or to the exportation of goods, technology, or software for use in the transmission of any data, or to the provision, sale, or leasing of capacity on telecommunications transmission facilities (such as satellite or terrestrial network connectivity) for use in the transmission of any data. The exportation of such items or

services and the provision, sale, or leasing of such capacity or facilities to a person whose property and interests in property are blocked pursuant to § 544.201(a) are prohibited.

(c) Travel. The prohibitions contained in this part do not apply to any transactions ordinarily incident to travel to or from any country, including importation of accompanied baggage for personal use, maintenance within any country including payment of living expenses and acquisition of goods or services for personal use, and arrangement or facilitation of such travel including nonscheduled air, sea, or land voyages.

**Subpart C—General Definitions**
31 CFR § 544.301

**§ 544.301 Blocked account; blocked property.**
The terms blocked account and blocked property shall mean any account or property subject to the prohibitions in § 544.201 held in the name of a person whose property and interests in property are blocked pursuant to § 544.201(a), or in which such person has an interest, and with respect to which payments, transfers, exportations, withdrawals, or other dealings may not be made or effected except pursuant to an authorization or license from the Office of Foreign Assets Control expressly authorizing such action.

Note to § 544.301: See § 544.411 concerning the blocked status of property and interests in property of an entity that is 50 percent or more owned by a person whose property and interests in property are blocked pursuant to § 544.201(a).
31 CFR § 544.302

**§ 544.302 Effective date.**
The term effective date refers to the effective date of the applicable prohibitions and directives contained in this part as follows:

(a) With respect to a person whose property and interests in property are blocked pursuant to § 544.201(a)(1), 12:01 a.m. eastern daylight time, June 29, 2005; and

(b) With respect to a person whose property and interests in property are blocked pursuant to § 544.201(a)(2), (a)(3), or (a)(4), the earlier of the date of actual or constructive notice of such person's designation.
31 CFR § 544.303

**§ 544.303 Entity.**
The term entity means a partnership, association, trust, joint venture, corporation, group, subgroup, or other organization.
31 CFR § 544.304

**§ 544.304 Information or informational materials.**
(a) For purposes of this part, the term information or informational materials includes, but is not limited to, publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, compact disks, CD-ROMs, artworks, and news wire feeds.

Note to paragraph (a) of § 544.304: To be considered information or informational materials, artworks must be classified under chapter heading 9701, 9702, or 9703 of the Harmonized Tariff Schedule of the United States.

(b) The term information or informational materials, with respect to United States exports, does not include items:

(1) That were, as of April 30, 1994, or that thereafter become, controlled for export pursuant to section 5 of the Export Administration Act of 1979, 50 U.S.C. App. 2401-2420 (1979) (the "EAA"), or section 6 of the EAA to the extent that such controls promote the nonproliferation or antiterrorism policies of the United States; or

(2) With respect to which acts are prohibited by 18 U.S.C. chapter 37.
31 CFR § 544.305

**§ 544.305 Interest.**
Except as otherwise provided in this part, the term interest, when used with respect to property (e.g., "an interest in property"), means an interest of any nature whatsoever, direct or indirect.
  31 CFR § 544.306

**§ 544.306 Licenses; general and specific.**
(a) Except as otherwise specified, the term license means any license or authorization contained in or issued pursuant to this part.

(b) The term general license means any license or authorization the terms of which are set forth in subpart E of this part.

(c) The term specific license means any license or authorization not set forth in subpart E of this part but issued pursuant to this part.

*16777 Note to § 544.306: See § 501.801 of this chapter on licensing procedures.
  31 CFR § 544.307

**§ 544.307 Person.**
The term person means an individual or entity.
  31 CFR § 544.308

**§ 544.308 Property; property interest.**
The terms property and property interest include, but are not limited to, money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling agreements, services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent.
  31 CFR § 544.309

**§ 544.309 Transfer.**
The term transfer means any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property and, without limitation upon the foregoing, shall include the making, execution, or delivery of any assignment, power, conveyance, check, declaration, deed, deed of trust, power of attorney, power of appointment, bill of sale, mortgage, receipt, agreement, contract, certificate, gift, sale, affidavit, or statement; the making of any payment; the setting off of any obligation or credit; the appointment of any agent, trustee, or fiduciary; the creation or transfer of any lien; the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment; the acquisition of any interest of any nature whatsoever by reason of a judgment or decree of any foreign country; the fulfillment of any condition; the exercise of any power of appointment, power of attorney, or other power; or the acquisition, disposition, transportation, importation, exportation, or withdrawal of any security.
  31 CFR § 544.310

**§ 544.310 United States.**
The term United States means the United States, its territories and possessions, and all areas under the jurisdiction or authority thereof.
  31 CFR § 544.311

**§ 544.311 U.S. financial institution.**

**Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01**

The term U.S. financial institution means any U.S. entity (including its foreign branches) that is engaged in the business of accepting deposits, making, granting, transferring, holding, or brokering loans or credits, or purchasing or selling foreign exchange, securities, commodity futures or options, or procuring purchasers and sellers thereof, as principal or agent; including but not limited to depository institutions, banks, savings banks, trust companies, securities brokers and dealers, commodity futures and options brokers and dealers, forward contract and foreign exchange merchants, securities and commodities exchanges, clearing corporations, investment companies, employee benefit plans, and U.S. holding companies, U.S. affiliates, or U.S. subsidiaries of any of the foregoing. This term includes those branches, offices and agencies of foreign financial institutions that are located in the United States, but not such institutions' foreign branches, offices, or agencies.
 31 CFR § 544.312

**§ 544.312 United States person; U.S. person.**
The term United States person or U.S. person means any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States.

**Subpart D—Interpretations**
31 CFR § 544.401

**§ 544.401 Reference to amended sections.**
Except as otherwise specified, reference to any provision in or appendix to this part or chapter or to any regulation, ruling, order, instruction, directive, or license issued pursuant to this part refers to the same as currently amended.
 31 CFR § 544.402

**§ 544.402 Effect of amendment.**
Unless otherwise specifically provided, any amendment, modification, or revocation of any provision in or appendix to this part or chapter or of any order, regulation, ruling, instruction, or license issued by or under the direction of the Director of the Office of Foreign Assets Control does not affect any act done or omitted, or any civil or criminal suit or proceeding commenced or pending prior to such amendment, modification, or revocation. All penalties, forfeitures, and liabilities under any such order, regulation, ruling, instruction, or license continue and may be enforced as if such amendment, modification, or revocation had not been made.
 31 CFR § 544.403

**§ 544.403 Termination and acquisition of an interest in blocked property.**
(a) Whenever a transaction licensed or authorized by or pursuant to this part results in the transfer of property (including any property interest) away from a person, such property shall no longer be deemed to be property blocked pursuant to § 544.201(a), unless there exists in the property another interest that is blocked pursuant to § 544.201(a) or any other part of this chapter, the transfer of which has not been effected pursuant to license or other authorization.

(b) Unless otherwise specifically provided in a license or authorization issued pursuant to this part, if property (including any property interest) is transferred or attempted to be transferred to a person whose property and interests in property are blocked pursuant to § 544.201(a), such property shall be deemed to be property in which that person has an interest and therefore blocked.
 31 CFR § 544.404

**§ 544.404 Transactions ordinarily incident to a licensed transaction.**
Any transaction ordinarily incident to a licensed transaction and necessary to give effect thereto is also authorized, except:

(a) An ordinarily incident transaction, not explicitly authorized within the terms of the license, by or with a person whose property and interests in property are blocked pursuant to § 544.201(a); or

(b) An ordinarily incident transaction, not explicitly authorized within the terms of the license, involving a debit to a blocked account or a transfer of blocked property.

(c) Example. A license authorizing Company A, whose property and interests in property are blocked pursuant to §

544.201(a), to complete a securities sale also authorizes all **\*16778** activities by other parties required to complete the sale, including transactions by the buyer, broker, transfer agents, banks, etc., provided that such other parties are not themselves persons whose property and interests in property are blocked pursuant to § 544.201(a).
 31 CFR § 544.405

### § 544.405 Provision of services.
(a) Except as provided in § 544.206, the prohibitions on transactions involving blocked property contained in § 544.201 apply to services performed in the United States or by U.S. persons, wherever located, including by an overseas branch of an entity located in the United States:

(1) On behalf of or for the benefit of a person whose property and interests in property are blocked pursuant to § 544.201(a); or

(2) With respect to property interests subject to § 544.201.

(b) Example: U.S. persons may not, except as authorized by or pursuant to this part, provide legal, accounting, financial, brokering, freight forwarding, transportation, public relations, or other services to a person whose property and interests in property are blocked pursuant to § 544.201(a).

Note to § 544.405: See §§ 544.507 and 544.508 on licensing policy with regard to the provision of certain legal and medical services.
 31 CFR § 544.406

### § 544.406 Offshore transactions.
The prohibitions in § 544.201 on transactions or dealings involving blocked property apply to transactions by any U.S. person in a location outside the United States with respect to property held in the name of a person whose property and interests in property are blocked pursuant to § 544.201(a), or property in which a person whose property and interests in property are blocked pursuant to § 544.201(a) has or has had an interest since the effective date.
 31 CFR § 544.407

### § 544.407 Payments from blocked accounts to satisfy obligations prohibited.
Pursuant to § 544.201, no debits may be made to a blocked account to pay obligations to U.S. persons or other persons, except as authorized by or pursuant to this part.
 31 CFR § 544.408

### § 544.408 Charitable contributions.
Unless specifically authorized by the Office of Foreign Assets Control pursuant to this part, no charitable contribution of funds, goods, services, or technology, including contributions to relieve human suffering, such as food, clothing, or medicine, may be made by, to, or for the benefit of a person whose property and interests in property are blocked pursuant to § 544.201(a). For the purposes of this part, a contribution is made by, to, or for the benefit of a person whose property and interests in property are blocked pursuant to § 544.201(a) if made by, to, or in the name of such a person; if made by, to, or in the name of an entity or individual acting for or on behalf of, or owned or controlled by, such a person; or if made in an attempt to violate, to evade, or to avoid the bar on the provision of contributions by, to, or for the benefit of such a person.
 31 CFR § 544.409

### § 544.409 Credit extended and cards issued by U.S. financial institutions.
The prohibition in § 544.201 on dealing in property subject to that section prohibits U.S. financial institutions from performing under any existing credit agreements, including, but not limited to, charge cards, debit cards, or other credit facilities issued by a U.S. financial institution to a person whose property and interests in property are blocked pursuant to § 544.201(a).
 31 CFR § 544.410

### § 544.410 Setoffs prohibited.
A setoff against blocked property (including a blocked account), whether by a U.S. bank or other U.S. person, is a prohibited transfer under § 544.201 if effected after the effective date.

31 CFR § 544.411

**§ 544.411 Entities owned by a person whose property and interests in property are blocked.**
A person whose property and interests in property are blocked pursuant to § 544.201(a) has an interest in all property and interests in property of an entity in which it owns, directly or indirectly, a 50 percent or greater interest. The property and interests in property of such an entity, therefore, are blocked, and such an entity is a person whose property and interests in property are blocked pursuant to § 544.201(a), regardless of whether the entity itself is listed in the Annex to Executive Order 13382 or designated pursuant to § 544.201(a).

**Subpart E—Licenses, Authorizations and Statements of Licensing Policy**
31 CFR § 544.501

**§ 544.501 General and specific licensing procedures.**
For provisions relating to licensing procedures, see part 501, subpart E of this chapter. Licensing actions taken pursuant to part 501 of this chapter with respect to the prohibitions contained in this part are considered actions taken pursuant to this part.
31 CFR § 544.502

**§ 544.502 Effect of license or authorization.**
(a) No license or other authorization contained in this part, or otherwise issued by or under the direction of the Director of the Office of Foreign Assets Control, authorizes or validates any transaction effected prior to the issuance of such license or other authorization, unless specifically provided in such license or authorization.

(b) No regulation, ruling, instruction, or license authorizes any transaction prohibited under this part unless the regulation, ruling, instruction or license is issued by the Office of Foreign Assets Control and specifically refers to this part. No regulation, ruling, instruction, or license referring to this part shall be deemed to authorize any transaction prohibited by any other provision of this chapter unless the regulation, ruling, instruction, or license specifically refers to such provision.

(c) Any regulation, ruling, instruction, or license authorizing any transaction otherwise prohibited under this part has the effect of removing a prohibition contained in this part from the transaction, but only to the extent specifically stated by its terms. Unless the regulation, ruling, instruction, or license otherwise specifies, such an authorization does not create any right, duty, obligation, claim, or interest in, or with respect to, any property that would not otherwise exist under ordinary principles of law.
31 CFR § 544.503

**§ 544.503 Exclusion from licenses.**
The Director of the Office of Foreign Assets Control reserves the right to exclude any person, property, or transaction from the operation of any license or from the privileges conferred by any license. The Director of the Office of Foreign Assets Control also reserves the right to restrict the applicability of any license to particular persons, property, transactions, or classes thereof. Such actions are binding upon actual or constructive notice of the exclusions or restrictions.
31 CFR § 544.504

**§ 544.504 Payments and transfers to blocked accounts in U.S. financial institutions.**
Any payment of funds or transfer of credit in which a person whose property and interests in property are blocked pursuant to § 544.201(a) has any interest that comes within the possession or control of a U.S. financial institution must be blocked in an account on the books of that financial institution. A transfer of funds or credit by a U.S. financial institution between blocked accounts in its branches or offices is authorized, provided that no transfer is *16779 made from an account within the United States to an account held outside the United States, and further provided that a transfer from a blocked account may be made only to another blocked account held in the same name.

Note to § 544.504: See § 501.603 of this chapter for mandatory reporting requirements regarding financial transfers. See also § 544.203 concerning the obligation to hold blocked funds in interest-bearing accounts.
31 CFR § 544.505

**§ 544.505 Entries in certain accounts for normal service charges authorized.**
(a) A U.S. financial institution is authorized to debit any blocked account held at that financial institution in payment or reimbursement for normal service charges owed it by the owner of that blocked account.

(b) As used in this section, the term normal service charges shall include charges in payment or reimbursement for interest due; cable, telegraph, internet, or telephone charges; postage costs; custody fees; small adjustment charges to correct bookkeeping errors; and, but not by way of limitation, minimum balance charges, notary and protest fees, and charges for reference books, photocopies, credit reports, transcripts of statements, registered mail, insurance, stationery and supplies, and other similar items.
  31 CFR § 544.506

**§ 544.506 Investment and reinvestment of certain funds.**
Subject to the requirements of § 544.203, U.S. financial institutions are authorized to invest and reinvest assets blocked pursuant to § 544.201, subject to the following conditions:

(a) The assets representing such investments and reinvestments are credited to a blocked account or subaccount that is held in the same name at the same U.S. financial institution, or within the possession or control of a U.S. person, but funds shall not be transferred outside the United States for this purpose;

(b) The proceeds of such investments and reinvestments shall not be credited to a blocked account or subaccount under any name or designation that differs from the name or designation of the specific blocked account or subaccount in which such funds or securities were held; and

(c) No immediate financial or economic benefit accrues (e.g., through pledging or other use) to persons whose property and interests in property are blocked pursuant to § 544.201(a).
  31 CFR § 544.507

**§ 544.507 Provision of certain legal services authorized.**
(a) The provision of the following legal services to or on behalf of persons whose property and interests in property are blocked pursuant to § 544.201(a) is authorized, provided that all receipts of payment of professional fees and reimbursement of incurred expenses must be specifically licensed:

(1) Provision of legal advice and counseling on the requirements of and compliance with the laws of the United States or any jurisdiction within the United States, provided that such advice and counseling are not provided to facilitate transactions in violation of this part;

(2) Representation of persons named as defendants in or otherwise made parties to domestic U.S. legal, arbitration, or administrative proceedings;

(3) Initiation and conduct of domestic U.S. legal, arbitration, or administrative proceedings in defense of property interests subject to U.S. jurisdiction;

(4) Representation of persons before any federal or state agency with respect to the imposition, administration, or enforcement of U.S. sanctions against such persons; and

(5) Provision of legal services in any other context in which prevailing U.S. law requires access to legal counsel at public expense.

(b) The provision of any other legal services to persons whose property and interests in property are blocked pursuant to § 544.201(a), not otherwise authorized in this part, requires the issuance of a specific license.

(c) Entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 544.201(a) is prohibited unless specifically licensed in accordance with § 544.202(e).
  31 CFR § 544.508

**§ 544.508 Authorization of emergency medical services.**
The provision of nonscheduled emergency medical services in the United States to persons whose property and interests in property are blocked pursuant to § 544.201(a) is authorized, provided that all receipt of payment for such services must be specifically licensed.

**Subpart F—Reports**
31 CFR § 544.601

**§ 544.601 Records and reports.**
For provisions relating to required records and reports, see part 501, subpart C, of this chapter. Recordkeeping and reporting requirements imposed by part 501 of this chapter with respect to the prohibitions contained in this part are considered requirements arising pursuant to this part.

**Subpart G—Penalties**
31 CFR § 544.701

**§ 544.701 Penalties.**
(a) Attention is directed to section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705) ("IEEPA"), which is applicable to violations of the provisions of any license, ruling, regulation, order, directive, or instruction issued by or pursuant to the direction or authorization of the Secretary of the Treasury pursuant to this part or otherwise under IEEPA.

(1) A civil penalty not to exceed the amount set forth in section 206 of IEEPA may be imposed on any person who violates, attempts to violate, conspires to violate, or causes a violation of any license, order, regulation, or prohibition issued under IEEPA.

Note to paragraph (a)(1) of § 544.701: As of the date of publication in the Federal Register of the final rule adding this part to 31 CFR chapter V (April 13, 2009), IEEPA provides for a maximum civil penalty not to exceed the greater of $250,000 or an amount that is twice the amount of the transaction that is the basis of the violation with respect to which the penalty is imposed.

(2) A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of a violation of any license, order, regulation, or prohibition may, upon conviction, be fined not more than $1,000,000, or if a natural person, be imprisoned for not more than 20 years, or both.

(b) Adjustments to penalty amounts. (1) The civil penalties provided in IEEPA are subject to adjustment pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (Pub. L. 101-410, as amended, 28 U.S.C. 2461 note).

(2) The criminal penalties provided in IEEPA are subject to adjustment pursuant to 18 U.S.C. 3571.

(c) Attention is also directed to 18 U.S.C. 1001, which provides that whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes any materially false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under *16780 title 18, United States Code, imprisoned not more than five years, or both.

(d) Violations of this part may also be subject to relevant provisions of other applicable laws.
31 CFR § 544.702

**§ 544.702 Pre-Penalty Notice; settlement.**
(a) When required. If the Office of Foreign Assets Control has reason to believe that there has occurred a violation of any provision of this part or a violation of the provisions of any license, ruling, regulation, order, direction, or instruction issued by or pursuant to the direction or authorization of the Secretary of the Treasury pursuant to this part or otherwise under

**Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01**

IEEPA and determines that a civil monetary penalty is warranted, the Office of Foreign Assets Control will issue a Pre-Penalty Notice informing the alleged violator of the agency's intent to impose a monetary penalty. A Pre-Penalty Notice shall be in writing. The Pre-Penalty Notice may be issued whether or not another agency has taken any action with respect to the matter. For a description of the contents of a Pre-Penalty Notice, see Appendix A to part 501 of this chapter.

(b)(1) Right to respond. An alleged violator has the right to respond to a Pre-Penalty Notice by making a written presentation to the Office of Foreign Assets Control. For a description of the information that should be included in such a response, see Appendix A to part 501 of this chapter.

(2) Deadline for response. A response to a Pre-Penalty Notice must be made within the applicable 30-day period set forth in this paragraph. The failure to submit a response within the applicable time period set forth in this paragraph shall be deemed to be a waiver of the right to respond.

(i) Computation of time for response. A response to a Pre-Penalty Notice must be postmarked or date-stamped by the U.S. Postal Service (or foreign postal service, if mailed abroad) or courier service provider (if transmitted to the Office of Foreign Assets Control by courier) on or before the 30th day after the postmark date on the envelope in which the Pre-Penalty Notice was mailed. If the Pre-Penalty Notice was personally delivered by a non-U.S. Postal Service agent authorized by the Office of Foreign Assets Control, a response must be postmarked or date-stamped on or before the 30th day after the date of delivery.

(ii) Extensions of time for response. If a due date falls on a federal holiday or weekend, that due date is extended to include the following business day. Any other extensions of time will be granted, at the discretion of the Office of Foreign Assets Control, only upon specific request to the Office of Foreign Assets Control.

(3) Form and method of response. A response to a Pre-Penalty Notice need not be in any particular form, but it must be typewritten and signed by the alleged violator or a representative thereof, must contain information sufficient to indicate that it is in response to the Pre-Penalty Notice, and must include the Office of Foreign Assets Control identification number listed on the Pre-Penalty Notice. A copy of the written response may be sent by facsimile, but the original also must be sent to the Office of Foreign Assets Control Civil Penalties Division by mail or courier and must be postmarked or date-stamped in accordance with paragraph (b)(2) of this section.

(c) Settlement. Settlement discussion may be initiated by the Office of Foreign Assets Control, the alleged violator, or the alleged violator's authorized representative. For a description of practices with respect to settlement, see Appendix A to part 501 of this chapter.

(d) Guidelines. Guidelines for the imposition or settlement of civil penalties by the Office of Foreign Assets Control are contained in Appendix A to part 501 of this chapter.

(e) Representation. A representative of the alleged violator may act on behalf of the alleged violator, but any oral communication with the Office of Foreign Assets Control prior to a written submission regarding the specific allegations contained in the Pre-Penalty Notice must be preceded by a written letter of representation, unless the Pre-Penalty Notice was served upon the alleged violator in care of the representative.
31 CFR § 544.703

**§ 544.703 Penalty imposition.**

If, after considering any written response to the Pre-Penalty Notice and any relevant facts, the Office of Foreign Assets Control determines that there was a violation by the alleged violator named in the Pre-Penalty Notice and that a civil monetary penalty is appropriate, the Office of Foreign Assets Control may issue a Penalty Notice to the violator containing a determination of the violation and the imposition of the monetary penalty. For additional details concerning issuance of a Penalty Notice, see Appendix A to part 501 of this chapter. The issuance of the Penalty Notice shall constitute final agency action. The violator has the right to seek judicial review of that final agency action in federal district court.
31 CFR § 544.704

**§ 544.704 Administrative collection; referral to United States Department of Justice.**

In the event that the violator does not pay the penalty imposed pursuant to this part or make payment arrangements

acceptable to the Director of the Office of Foreign Assets Control, the matter may be referred for administrative collection measures by the Department of the Treasury or to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a federal district court.

**Subpart H.—Procedures**
31 CFR § 544.801

**§ 544.801 Procedures.**
For license application procedures and procedures relating to amendments, modifications, or revocations of licenses; administrative decisions; rulemaking; and requests for documents pursuant to the Freedom of Information and Privacy Acts (5 U.S.C. 552 and 552a), see part 501, subpart E, of this chapter.
 31 CFR § 544.802

**§ 544.802 Delegation by the Secretary of the Treasury.**
Any action that the Secretary of the Treasury is authorized to take pursuant to Executive Order 13382 of June 28, 2005 (70 FR 38567, July 1, 2005), and any further Executive Orders relating to the national emergency declared in Executive Order 12938 of November 14, 1994, as expanded by Executive Order 13094 of July 28, 1998, and with respect to which additional steps were taken in Executive Order 13382 of June 28, 2005, may be taken by the Director of the Office of Foreign Assets Control or by any other person to whom the Secretary of the Treasury has delegated authority so to act.

**Subpart I—Paperwork Reduction Act**
31 CFR § 544.901

**§ 544.901 Paperwork Reduction Act notice.**
For approval by the Office of Management and Budget ("OMB") under the Paperwork Reduction Act of 1995 (44 U.S.C. 3507) of information collections relating to recordkeeping and reporting requirements, licensing procedures (including those pursuant to statements of licensing policy), and other procedures, see § 501.901 of this chapter. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by OMB.

**\*16781** Dated: March 31, 2009.

Adam J. Szubin,

Director, Office of Foreign Assets Control.


Approved: April 3, 2009.

Stuart A. Levey,

Under Secretary, Office of Terrorism and Financial Intelligence, Department of the Treasury.


[FR Doc. E9-8336 Filed 4-10-09; 8:45 am]

BILLING CODE 4811-45-P

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

I certify that on this 24th day of October, 2013, the foregoing has been served on

the following counsel for all parties listed on the attorney service preference report,

via the Court's electronic case filing system:

**Bradford A. Berenson, Esq.**
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
*bberenson@sidley.com*

**Rupa Bhattacharyya, Esq.**
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. Box 883
Washington, DC 20530
*rupa.bhattacharyya@usdoj.gov*

**Ferris Ridgely Bond, Esq.**
BOND & NORMAN
777 Sixth Street, NW
Suite 410
Washington, DC 20001
*ferrisbond@bondandnorman.com*

**Karl H. Buch, Esq.**
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
*kbuch@chadbourne.com*

**Varu Chilakamarri, Esq.**
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 6141

Washington, DC 20001
*varudhini.chilakamarri@usdoj.gov*

**Kay M. Clarke, Esq.**
5450 Burford Street
San Diego, CA 92111
*covelok@aol.com*

**Jacqueline E. Coleman Snead, Esq.**
U.S. DEPARTMENT OF JUSTICE
Civil Division
20 Massachusetts Avenue, NW
Room 7218
Washington, DC 20530
*jacqueline.snead@usdoj.gov*

**David J. Cook, Esq.**
COOK COLLECTION ATTORNEYS, P.L.C.
165 Fell Street
San Francisco, CA 94102-5106
*cook@squeezebloodfromturnip.com*

**Joseph Peter Drennan, Esq.**
JOSEPH PETER DRENNAN, ATTORNEY-AT-LAW
218 North Lee Street
3rd Floor
Alexandria, VA 22314
*joseph@josephpeterdrennan.com*

**Robert Peter Feeney, Esq.**
ROBERT P. FEENEY, ESQUIRE
702 Russell Avenue
Suite 300
Gaithersburg, MD 20877
*bobfeeney11@gmail.com*

**Griffith L. Green, Esq.**
SIDLEY AUSTIN, LLP

1501 K Street, NW
Washington, DC 20005-1401
*ggreen@sidley.com*

**James H. Hulme, Esq.**
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
*hulme.james@arentfox.com*

**Anthony J. LaSpada, Esq.**
1802 North Morgan Street
Tampa, FL 33602
*ajl@laspada.com*

**Lynn Yuhee Lee, Esq.**
U.S. DEPARTMENT OF JUSTICE
Civil Division-Federal Programs Branch
P.O. Box 883
Washington, DC 20044
*lynn.lee@usdoj.gov*

**Robert W. Littleton, Esq.**
LITTLETON JOYCE UGHETTA PARK & KELLY, LLP
39 Broadway
34th Floor
New York, NY 10006
*robert.littleton@littletonjoyce.com*

**Tuna Mecit, Esq.**
4101 Albemarle Street, NW
Suite 422
Washington, DC 20016
*tmecit@yahoo.com*

**Jane Carol Norman, Esq.**
BOND & NORMAN, PLLC

777 Sixth St. NW #410
Washington, DC 20001
*jnorman425@aol.com*

**Alex Young K. Oh, Esq.**
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
5th Floor
Washington, DC 20006
*aoh@paulweiss.com*

**Frank Panopoulos, Esq.**
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
*fpanopoulos@whitecase.com*

**Steven R. Perles, Esq.**
PERLES LAW FIRM, P.C.
1146 19th Street, NW
5th Floor
Washington, DC 20036
*sperles@perleslaw.com*

**Heather R. Phillips, Esq.**
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 7222
Washington, DC 20001
*heather.phillips@usdoj.gov*

**Allen Louis Rothenberg, Esq.**
1420 Walnut Street
Philadelphia, PA 19102
*allen@injurylawyer.com*

**Francis A. Vasquez, Jr., Esq.**
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
*fvasquez@whitecase.com*

**Eric R. Womack, Esq.**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
*eric.womack@usdoj.gov*

**Bruce E. Clark**
SULLIVAN & CROMWELL, L.L.P.
125 Broad Street
New York, New York
10004-2498
(212) 558-4000
Facsimile: (212) 558-3588
*clarkb@sullcrom.com*


/s/ Thomas Fortune Fay, Esq.
　Thomas Fortune Fay


　/s/ John Vail, Esq.
　　John Vail